PROJECT 80's, INC. and David John
Fitzen, Plaintiffs–Appellants,

v.

CITY OF POCATELLO and the City of
Idaho Falls, Idaho,
Defendants–Appellees.

No. 86–4348.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1987.

Decided Sept. 15, 1988.

As Amended on Denial of Rehearing and
Rehearing En Banc May 25, 1989.

F. Michael Burkett, Boise, Idaho, for
plaintiffs/appellants.

Nancy A. Ferris, Pocatello, Idaho, for the
defendant/appellee, City of Pocatello.

Joseph C. Burgess, Idaho Falls, Idaho,
for defendant/appellee, City of Idaho Falls.

Before CANBY, REINHARDT and
BEEZER, Circuit Judges.

CANBY, Circuit Judge:

This action challenges the constitutionali-
ty of two ordinances that ban uninvited
residential door-to-door solicitation. The
district court concluded that the ordinances
did not violate appellants' First Amend-
ment right of commercial speech, and it
accordingly granted summary judgment
for the defendants. We reverse.

## FACTS

The two ordinances are almost identical. The Idaho Falls ordinance provides:

UNINVITED PEDDLERS PROHIBITED: The practice of going in and upon private residences in the Municipality by solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise, not having been requested or invited to do so by the owner or occupant of said private premises, for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling or hawking the same is hereby prohibited and punishable under the provisions of this Code.

Idaho Falls City Code § 5–4–1. The Pocatello ordinance [1] is to the same effect, except that it contains a proviso that "persons who solicit donations for charitable or nonprofit organizations shall not be deemed to be in violation" of the ordinance.

Plaintiffs are Project 80's, Inc., and David Fitzen.[2] Project 80's is an Idaho corporation providing work programs for teen-age youths. David Fitzen, who began working for Project 80's as a teen-ager, now coordinates solicitation and sales in an area that includes Pocatello and Idaho Falls. His sales force, all under the age of eighteen, sell various confectionaries door-to-door. They normally sell between the hours of 4:00 and 8:30 p.m. on weekdays and all day on Saturdays. In 1984, Project 80's sought licenses from both Pocatello and Idaho Falls to conduct door-to-door sales. The licenses were denied. Project 80's nevertheless sent its staff into both cities and conducted door-to-door sales. On February 4, 1986, the Pocatello Police Department issued citations against two minors employed by Project 80's for violation of the Pocatello anti-solicitation ordinance. The Pocatello police also cited Fitzen for encouraging the delinquency of a minor. In March 1986, the Idaho Falls Police Department, responding to a complaint, cited Fitzen for violation of the Idaho Falls ordinance.

Project 80's subsequently brought this action challenging the constitutionality of the two ordinances and seeking declaratory and injunctive relief against their enforcement.[3] The district court granted summary judgment for the defendants.

## DISCUSSION

Project 80's claim lies rather neatly at the intersection of two developing lines of First Amendment law. One has to do with the evolving standards for protection of commercial speech; the other with the permissible extent of time, place, and manner restrictions on door-to-door solicitation. We will discuss each in turn.

*Commercial speech*

In *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), the Supreme Court upheld an ordinance against door-to-door solicitation, and observed that a First Amendment challenge to such an ordinance was "not open to the solicitors

1. Pocatello City Ordinance No. 9.24.010 provides:
   Uninvited peddlers declared nuisance.
   A. The practice of going in and upon private residences in the municipality by solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise not having been requested or invited to do so by the owner or owners, occupant, or occupants of the private residences is declared to be a nuisance and punishable as such nuisance as a misdemeanor.
   B. Acts prohibited under this section include solicitation of orders for the sale of, or payment for, any goods, wares, merchandise, services, employment or contracting for any of the aforementioned. Requests for goods, gifts, donations or services by the solicitor, salesperson or vendor from the resident is also declared a nuisance; provided, however, persons who solicit donations for charitable or nonprofit organizations shall not be deemed to be in violation of this chapter.

2. Unless otherwise indicated, references to "Project 80's" in this opinion include Fitzen.

3. The record before us does not disclose what final disposition was made of the citations issued by the two cities. We do not read Project 80's' complaint as seeking relief from those citations; it prays for relief against "further" enforcement. Accordingly, abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not an issue. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). Neither city has suggested abstention in the district court or this court.

for gadgets or brushes." *Id.* at 641, 71 S.Ct. at 932. *Breard,* however, was decided at a time when commercial advertising was thought to be wholly unprotected by the First Amendment. *See Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942).

Subsequently, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court held that the First Amendment protected purely commercial advertisements of prescription drug prices. The information conveyed by such advertising was viewed as highly important and beneficial to the consumer and to society. *Id.* at 763–65, 96 S.Ct. at 1826–27. Commercial advertising has since been protected in a number of contexts. *E.g., Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Shapero v. Kentucky Bar Ass'n,* —— U.S. ——, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). Despite the value and importance of commercial speech, it was understood from the beginning that it was entitled to a lower degree of First Amendment protection than noncommercial speech. Commercial speech, for example, could be prohibited if it was misleading or deceptive, *see Virginia Board of Pharmacy,* 425 U.S. at 771–72, 96 S.Ct. at 1830–31, or if it advertised a transaction or activity that was itself illegal, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed. 2d 669 (1973). Whether further regulation was permitted was not clear at first, but the Supreme Court later announced a standard in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In striking down a state prohibition on the advertising of electric power, the Court adopted a four-part test for regulation of commercial speech:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it

at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. at 2351.

The parties disagree on whether the application of this test must result in the invalidation of the Idaho Falls and Pocatello ordinances. They further disagree on the question whether this *Central Hudson* standard itself applies with full force to ordinances prohibiting door-to-door solicitation—an area normally governed by a somewhat divergent test for time, place and manner regulation of noncommercial speech. We address these questions in order.

■ The first issue under the four-prong *Central Hudson* analysis is whether Project 80's sales activities constitute expression protected by the First Amendment. There is no dispute that the sale of candies and similar items is generally lawful, and there is no claim that Project 80's' sales pitch is misleading or deceptive. Pocatello suggests, however, that the activity of Project 80's in consummating sales door-to-door is primarily conduct, and that the speech element is so subordinated that the First Amendment may not be implicated at all. Pocatello points out that most of the decisions protecting commercial speech, like *Virginia Board of Pharmacy,* involve advertising, not actual sales. The ordinances in question here do not forbid Project 80's from leaving printed advertisements on the homeowner's doorstep; they merely prohibit in-person solicitation. Pocatello relies upon *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), in which the Supreme Court upheld a prohibition of in-person solicitation of clients by lawyers, stating that "[a] lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns." *Id.* at 459, 98 S.Ct. at 1920.

Pocatello's argument goes too far, however, in suggesting that the sales activities of Project 80's do not implicate the First Amendment at all. The decision in *Ohralik* was primarily based on the potential for overreaching by an attorney who importunes a potential client, not on the fact that solicitation was devoid of information. *See Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 641, 105 S.Ct. 2265, 2276, 85 L.Ed.2d 652 (1985). There can be little question that the door-to-door sales of Project 80's involve a considerable degree of commercial communication by the sales force. As the Supreme Court noted in a case involving noncommercial door-to-door fundraising, "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes...." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); *see Hynes v. Mayor of Oradell,* 425 U.S. 610, 616–18, 96 S.Ct. 1755, 1758–59, 48 L.Ed.2d 243 (1976). We conclude, therefore, that the door-to-door solicitation of Project 80's includes a sufficient element of commercial speech to qualify under the first prong of the *Central Hudson* standard. The speech component of that solicitation does not disappear merely because it is connected with a sale or attempted sale. Nor does it vanish simply because an alternative of printed communication may exist. Alternatives may enter the analysis under other prongs of the *Central Hudson* analysis, *see, e.g., American Future Systems v. Penn. State University,* 752 F.2d 854, 866 (3d Cir.1984), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3537, 87 L.Ed.2d 660 (1985), but they do not remove in-person solicitation from the First Amendment altogether.

■ The next issue under *Central Hudson* is whether the governmental interest is substantial. Idaho Falls asserts a governmental interest in protecting the privacy and repose of its citizens in their homes. To this Pocatello adds the interests of consumer protection, regulation of commercial transactions, and prevention of crime. "Regulation of commercial transactions" is more of a practice than an interest; we

would have to be told the purpose of the regulation to determine whether an important governmental interest was involved. We have little difficulty, however, in accepting privacy, prevention of crime, and consumer protection as substantial state interests. *See Frisby v. Schultz,* —— U.S. ——, ——, 108 S.Ct. 2495, 2502, 101 L.Ed. 2d 420 (1988); *Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980).

■ The third *Central Hudson* issue is whether the governmental interests are directly advanced by the regulation. The interest in protecting the privacy of residents presents some difficulty for the cities. Privacy is inherently an individual matter; it is difficult to violate a person's privacy unless that person wishes to be let alone. By these ordinances, Idaho Falls and Pocatello seek to make the choice for the resident whether or not to receive uninvited solicitors. *See Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *compare Rowan v. United States Post Office Dep't.,* 397 U.S. 728, 736–37, 90 S.Ct. 1484, 1490–91, 25 L.Ed.2d 736 (1970). The ordinances thus do not protect privacy when applied to residences whose occupants welcome uninvited solicitors. On the other hand, when the residents wish not to be disturbed, the ordinances directly protect their privacy. Prevention of crime is more problematical; crime might be reduced by prohibiting solicitors from summoning residents to their doors, but there is little in the record to substantiate that view. There is no prohibition against strangers coming to doorsteps to leave handbills; much opportunity for crime consequently is left unaffected. It is even more doubtful that consumer protection is served by the ordinances; there is no showing that door-to-door solicitation has resulted in overreaching, or that consumers are more susceptible to unfair sales pitches when standing in their doors than when they are on the street or in the store. It is therefore the privacy interest, and perhaps marginally the crime-prevention interest, that satisfy the cities' require-

*ments under the third prong of the* Central Hudson *test.*

■ The final question under *Central Hudson* is whether the ordinances are "more extensive than is necessary to serve" the cities' interests. *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351. It is here that Project 80's' argument is at its strongest. To protect privacy, there is clearly a less restrictive alternative available to the cities.[4] Citizens who desire privacy can post a notice to that effect, or can inform a central registry established by the city. Crime prevention can be served by requiring solicitors to register; Project 80's itself sought to obtain licenses from the cities involved here.[5] "A city can punish those who call at a home in defiance of the previously expressed will of the occupant and, in addition, can by identification devices control the abuse of the privilege by criminals posing as canvassers." *Martin v. Struthers,* 319 U.S. 141, 148, 63 S.Ct. 862, 866, 87 L.Ed. 1313 (1943). The existence of such alternatives precludes the broad prohibition enacted by Idaho Falls and Pocatello. *See ACORN v. City of Frontenac,* 714 F.2d 813, 819 (8th Cir. 1983); *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248, 1257 (7th Cir. 1985); *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1557 (7th Cir.1986), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

Nothing in the Supreme Court's most recent decision involving residential privacy, *Frisby v. Schultz,* —— U.S. ——, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), modifies this conclusion. In *Frisby,* the Court rejected a facial challenge to a city ordinance that was construed to ban picketing targeted at an individual residence. Central to the Court's decision was the fact that "[t]he offensive nature of the form of communication banned by the ... ordinance ... can scarcely be questioned." *Id.* at ——, 108 S.Ct. at 2503. Thus the very nature of residential picketing made it unwelcome. The court made its rationale clear at the conclusion of its opinion:

Particular hypothetical applications of the ordinance—to, for example, ... picketers present at a particular home by invitation of the resident—may present somewhat different questions.... [S]ince our First Amendment analysis is grounded in protection of the unwilling residential listener, the constitutionality of applying the ordinance to such hypotheticals remains open to question.

Because the picketing prohibited by the ... ordinance is speech directed primarily at those who are presumptively unwilling to receive it, the State has a substantial and justifiable interest in banning it. The nature and scope of this interest make the bank narrowly tailored.

*Id.* at ——, 108 S.Ct. at 2504.

Unlike the ordinance in *Frisby,* the ordinances of Idaho Falls and Pocatello restrict

---

4. Like the Second Circuit, *Fox v. Board of Trustees,* 841 F.2d 1207 (1988), *petition for cert. filed,* we view the fourth prong of the *Central Hudson* test as embodying a requirement of the "least restrictive alternative." *See Actmedia, Inc. v. Stroh,* 830 F.2d 957, 966 (9th Cir.1986). The Court in *Central Hudson* stated:

The regulatory technique may extend only as far as the interest it serves. The State cannot regulate speech that poses no danger to the asserted state interest ... nor can it completely suppress information when narrower restrictions on expression would serve its interest as well.

447 U.S. at 565, 100 S.Ct. at 2351 (citation omitted). The Third Circuit, however, has held that *Central Hudson* does not require the least restrictive alternative. *American Future Systems v. Penn. State University,* 752 F.2d 854, 865 (3d Cir.1984). With respect, we disagree.

5. This case is accordingly different from *Posadas de Puerto Rico Associates v. Tourism Co.,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), where the Supreme Court upheld a prohibition of advertising of casino gambling. Because the government's interest was "the reduction of demand for casino gambling by the residents of Puerto Rico," *id.* at 341, 106 S.Ct. at 2978, a ban against only the advertisement of *casino* gambling to *residents* was no broader than necessary to serve that interest. *Id.* at 342–44, 106 S.Ct. at 2977–78. The *Posada* opinion also relied in part on the latitude to be given governments in regulating "products or activities deemed harmful" and subject to total prohibition, or lesser restrictions, on that account. *Id.* at 346–47, 106 S.Ct. at 2979–80. Nothing on the order of gambling, prostitution, or liquor sale is involved here.

an activity that is not inherently unwelcome. By sweeping far more broadly than necessary to protect privacy, the ordinances fail to satisfy the fourth requirement of *Central Hudson.*

*Time, place and manner restrictions*

■ The two cities argue, in various ways, that it is inappropriate to apply the *Central Hudson* test in its full force to their ordinances prohibiting uninvited door-to-door solicitation. It is true that the *Central Hudson* analysis has usually been employed to test the validity of *content* regulation of commercial speech. *Central Hudson* itself dealt with a regulation banning the advertisement of electric power. And in *Posadas de Puerto Rico Associates v. Tourism Co.,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), the Supreme Court applied the *Central Hudson* standard to a statute prohibiting the advertisement of casino gambling directed to residents of Puerto Rico. The Court upheld the statute, concluding that the state interest in reducing the demand of residents for casino gambling could be served in no less restrictive way.

Idaho Falls and Pocatello contend that the *Central Hudson* analysis, and particularly its fourth prong, is simply inappropriate for determining the validity of a time, place and manner regulation that is not directed at content.[6] Idaho Falls and Pocatello rely on *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), in which the Supreme Court upheld a zoning ordinance that prohibited "adult" theaters in residential districts. The Court viewed the ordinance as content-neutral, and held that " 'content-neutral' " time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. at 928–29; *see also United States v. Albertini,* 472 U.S. 675, 688–89, 105 S.Ct. 2897, 2906–07, 86 L.Ed.2d 536 (1985). Idaho Falls and Pocatello argue that *Renton* dispenses with any requirement that the ordinances employ the least restrictive means of serving the cities' interests.

The Third Circuit, in a case preceding *Renton,* has taken a position similar to that urged by Idaho Falls and Pocatello, holding that a time, place and manner regulation is sufficiently "tailored" if the regulation leaves open "ample alternative channels of communication."[7] *Pennsylvania Alliance for Jobs and Energy v. Council of Munhall,* 743 F.2d 182, 185 (3d Cir.1984). The Fifth Circuit, applying *Renton,* has held that "narrow tailoring" is an independent requirement in addition to "ample alternative channels," but that it does not necessitate employment of the least restrictive means. *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1276 (5th Cir.), *rehearing en banc denied,* 841 F.2d 107 (1988), *petition for cert. filed.* The Seventh Circuit, however, has viewed *Renton* as consistent with a host of prior cases that employed some variant of the least restrictive means test. *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1551–53 (7th Cir. 1986) (citing *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 296, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984);

6. Project 80's vigorously disputes the proposition that the ordinances are content-neutral, because of express or implied exceptions for non-profit solicitors, *see ACORN v. Municipality of Golden,* 744 F.2d 739, 749 (9th Cir.1984). For purposes of our analysis, however, we will accept the cities' characterization.

7. The parties vigorously dispute whether the ordinances, which leave Project 80's free to advertise by other methods or to make telephone appointments, provide "ample alternative channels." Project 80's relies on *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), which struck down an ordinance against "For Sale" signs on residential property; the alternatives were held less effective or more costly, *id.* at 93, 97 S.Ct. at 1618. *See also Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1142 (3d Cir.), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982). Our conclusion that the ordinances are invalid for failure to employ less restrictive alternatives makes it unnecessary for us to address the issue of "ample alternatives." We point out the distinction between the two issues: "ample alternative channels" refers to the alternatives available to the speaker; "less restrictive alternatives" refers to alternatives available to the regulator.

*Members of City Council v. Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Grayned v. City of Rockford,* 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972); *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 98–99, 92 S.Ct. 2286, 2291–92, 33 L.Ed.2d 212 (1972)), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987). *See also Heffron v. Int'l Society of Krishna Consciousness, Inc.,* 452 U.S. 640, 654, 101 S.Ct. 2559, 2567, 69 L.Ed.2d 298 (1981).

In the most extensive treatment of the subject, the Seventh Circuit held that a time, place and manner restriction on door-to-door solicitation not only must leave open adequate alternative channels of communication, but also must employ the least restrictive means of protecting the public interest. *Watseka,* 796 F.2d at 1552. The judgment of the Seventh Circuit was affirmed without opinion by the Supreme Court. *Watseka,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987). Ordinarily, we would end our inquiry there, for summary affirmances by the Supreme Court create precedent that is binding upon us. *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975).

The Fifth Circuit, however, has taken the position that the summary affirmance of *Watseka* does not establish the legitimacy of the least restrictive means test. *SDJ, Inc. v. City of Houston,* 841 F.2d 107 (5th Cir.1988) (on denial of rehearing en banc), *petition for cert. filed.* The Fifth Circuit was of the view that, in affirming, the Supreme Court had not necessarily decided that issue. With all respect, we disagree with the Fifth Circuit. Three Justices dissented from the summary affirmance on the express and sole ground that the court of appeals should not have imposed a requirement of the least restrictive means upon a time, place and manner regulation. *Watseka,* 107 S.Ct. at 920 (White, Jr., joined by Rehnquist, C.J., and O'Connor, J., dissenting). The jurisdictional statement in *Watseka* presented the Supreme Court with the question whether the ordinance's limitation must merely be reasonable, or "must be the most reasonable limitation." *SDJ, Inc.,* 841 F.2d at 108. Under these circumstances, we conclude that the Supreme Court's affirmance addresses and approves the least restrictive means test imposed by the Seventh Circuit in *Watseka.* In light of the Fifth Circuit's position, however, we add that we would reach the same conclusion in the absence of the Supreme Court's affirmance of *Watseka.*

We agree with the Seventh Circuit that policy and pre-*Watseka* Supreme Court precedent support the imposition of a least restrictive means requirement. *Watseka,* 796 F.2d at 1553 and cases there cited; *see Wisconsin Action Coalition v. Kenosha,* 767 F.2d 1248, 1255 (7th Cir.1985). The Eighth Circuit reached a similar conclusion in striking down an ordinance restricting door-to-door solicitation. *ACORN v. City of Frontenac,* 714 F.2d 813, 818–19 (8th Cir.1983); *see also New York City Unemployed and Welfare Council v. Brezenoff,* 677 F.2d 232, 237 (2d Cir.1982). We also agree with the Seventh Circuit's view in *Watseka* that *Renton* did not discard the requirement that content-neutral time, place and manner restrictions employ means no more restrictive than necessary to serve the governmental interest. The Court in *Renton* itself observed that "the Renton ordinance is 'narrowly tailored' to affect only that category of theaters shown to produce the unwanted secondary effects." *Renton,* 475 U.S. at 52, 106 S.Ct. at 931. Moreover, in its most recent case dealing with a time, place and manner restriction, the Supreme Court reiterated the requirement that such restrictions be narrowly tailored. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz,* 108 S.Ct. at 2502.

Idaho Falls and Pocatello contend that, even if the least restrictive alternative requirement is appropriate for time, place, and manner restrictions of *non*commercial speech, it is not an appropriate requirement for commercial speech. We fail to see why. Commercial speech is protected because of the value of its information to the consumer and to the public in our free market economy. *Virginia Board of Pharmacy,* 425 U.S. at 763–65, 96 S.Ct. at 1826–27. There is nothing in nature of the

information that renders it appropriate for the cities to restrict it unnecessarily. The very existence of the *Central Hudson* test, which arose in a context of commercial speech, suggests otherwise. Moreover, a majority of the Supreme Court applied the least restrictive alternative analysis of *Central Hudson* in testing the validity of a prohibition of off-site commercial billboards, a prohibition that was at least partly a regulation of place and manner. *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 508, 101 S.Ct. 2882, 2893, 69 L.Ed.2d 800 (1981) (prohibition goes no further than necessary to serve aesthetic and traffic-safety interests).

Even if we assume that the "least restrictive alternative" requirement need not, in all good sense, be employed to the full extent of the superlative "least," the ordinances of Idaho Falls and Pocatello fall far short of any reasonable requirement of necessity. For the same reasons that we found these ordinances deficient under the fourth prong of *Central Hudson*, they fail as appropriate time, place, and manner restrictions. Privacy is easily served by prohibiting solicitation at households that have posted a sign or listed themselves in a registry; crime can be regulated by licensing, registration, and normal enforcement. Consumer protection, an interest the cities have not elaborated upon, can be served by providing for a period of free rescission of sales. By rejecting such reasonable alternatives in favor of a total prohibition on uninvited solicitation, these ordinances violate the First Amendment commercial speech rights of Project 80's.

## CONCLUSION

The summary judgments in favor of Idaho Falls and Pocatello are reversed;[8] the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

8. Our disposition of this case renders it unnecessary to deal with the question whether the ordinances expressly or in their enforcement discriminate impermissibly between commercial solicitors and nonprofit solicitors. *Cf. City of Lakewood v. Plain Dealer Publishing Co.,* —— U.S. ——, ——, 108 S.Ct. 2138, 2146–50, 100 L.Ed.2d 771 (1988).