The PRESBYTERIAN CHURCH (U.S.A.), et. al., Plaintiffs,

v.

The UNITED STATES of America, et al., Defendants.

No. CIV 86–0072–PHX–RGS.

United States District Court, D. Arizona.

Dec. 11, 1990.

1506

Peter D. Baird, Janet Napolitano, Jordan Green, Patricia K. Norris, Sara Baird, for plaintiffs.

Mary P. Mitchell, Gordon W. Daiger, Virginia A. Mathis, for defendants.

## MEMORANDUM AND ORDER

STRAND, District Judge.

### BACKGROUND

The Alzona Evangelical Lutheran Church, Camelback United Presbyterian Church, Southside United Presbyterian Church, Sunrise United Presbyterian Church, and two national parent denominations, the Presbyterian Church (U.S.A.) and American Lutheran Church ("Churches"), brought this action against the United States, Immigration and Naturalization Service ("INS"), and the United States Department of Justice claiming constitutional violations arising from INS undercover operations.

In 1984, the INS hired undercover informants to investigate possible unlawful ac-

tivities within the Sanctuary Movement.[1] The INS covert operations included undercover informants present at church sponsored activities and regular worship services. On at least one occasion, the informant (Mr. Jesus Cruz) taped a worship service which consisted of prayer, hymns, and Bible readings. This undercover operation was made public during the criminal prosecution of several Sanctuary Movement members. *United States v. Aguilar,* 883 F.2d 662 (9th Cir.1989).

In 1986, plaintiffs filed this lawsuit claiming the free exercise clause of the first amendment of the United States Constitution had been violated, as well as their first amendment rights of free speech, belief, and association. The Churches also claimed violations of their fourth amendment rights alleging the infiltration of the church services was done without a warrant and in the absence of probable cause to believe that unlawful conduct was taking place. Plaintiffs sought declaratory and injunctive relief, and nominal damages against the individual INS agents involved.

The district court granted the government's Motion to Dismiss, concluding that the Churches lacked standing to bring the first amendment claim, and that plaintiffs failed to state a claim under the fourth amendment. The district court also ruled that the Churches were barred from recovering monetary damages against the individual INS officers based on the doctrine of qualified immunity, and that sovereign immunity prevented any relief against the United States, INS, and the Department of Justice.

Plaintiffs appealed to the Ninth Circuit. *The Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 523 (9th Cir.1989). The appellate panel affirmed the district court on the issue of qualified immunity, but reversed the lower court on the issues of standing under the first amendment and sovereign immunity.

On remand, Churches have filed a Motion for Partial Summary Judgment seeking declaratory relief against the government on the first amendment claim. Plaintiffs seek such relief arguing declaratory relief is appropriate in that it will settle the relationship between the churches and the government, and will also give Church members relief from the insecurity and uncertainty which has resulted from this controversy.

## PRELIMINARY DETERMINATIONS

Although the Ninth Circuit held "that the injuries alleged in the complaint are an adequate foundation for standing" to pursue injunctive relief, *Church,* 870 F.2d at 518, 521, the court remanded the action back to the district court to determine if the Churches could seek prospective relief against such surveillance, "for when injunctive relief is sought, litigants must demonstrate a 'credible threat' of future injury." *Id.* at 529 (citations omitted). The Ninth Circuit also remanded the matter back to the district court because the appellate panel was "unable to assess the likelihood that the INS will again engage in the kind of church surveillance challenged in this case." *Id.* Therefore, this court must make a determination of whether the churches have standing to seek prospective relief, and whether this case is moot. Initially, however, the court must resolve whether plaintiffs have satisfied their burden of production for summary judgment purposes.

### A. *Motion for Partial Summary Judgment*

As to the motion for partial summary judgment, defendants argue plaintiffs' motion is not supported by the record. Further, defendants note that plaintiffs bear the burden of proof on these issues at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Under *Celotex,* a court considering a summary judgment motion "need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production." *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2556. Defendants argue the pleadings

---

1. The Sanctuary Movement is a loose association of religious activists, both clergy and lay people, aiding refugees from Central and South America by bringing them into this country.

and other matters in the record do not support plaintiffs' burden of production, and the court need go no further in the resolution of this matter.

■■ Summary judgment should not be predicated upon papers which do not satisfy Rule 56(c) compliance. *United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir.1970). "In general, only admissible evidence may be considered by a trial court in granting summary judgment." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n. 9 (9th Cir.1980). An unverified complaint is legal memoranda and may not be treated as an affidavit in opposition to summary judgment because it does not purport to be based upon personal knowledge by an affiant competent to testify to such facts. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). Legal memoranda and oral argument do not constitute evidence within the meaning of Rule 56(e), and cannot by themselves, create a factual dispute sufficient to defeat a summary judgment motion where no other dispute exists. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir.1974).

■ In this instance, plaintiffs filed a summary judgment motion relying on an unverified amended complaint, the statement of facts as required by Local Rule 11(1), four declarations (three by pastors of the various churches, and in one case a church elder), and trial testimony from an earlier criminal trial. *United States v. Aguilar*, 883 F.2d 662 (9th Cir.1989). Since the unverified complaint does not constitute an affidavit for Rule 56 purposes, paragraphs in the Revised Statement of Facts which cite to the amended complaint cannot be considered support for summary judgment purposes. Some of the paragraphs contained in the revised statement of facts do support the summary judgment motion because they cite to appropriate documents for Rule 56 purposes, specifically, the four declarations and trial testimony. As this material is admissable under Rule 56(c) and (e), the court will consider these documents to determine if plaintiffs have carried their burden of production under Rule 56 and *Celotex*.

From the admissible documents, the court finds and concludes that plaintiffs have carried their burden of production under the *Celotex* standard. From the declarations and previous trial testimony, plaintiffs have demonstrated Mr. Cruz was present at various church sponsored activities on different days and that tape recordings of at least one religious service were made. Plaintiffs also established Mr. Cruz was used by the INS during Operation Sojourner to covertly investigate the Sanctuary Movement. Such investigations took place on the grounds and property of the churches, and also within the churches themselves.

Therefore, plaintiffs have placed sufficient facts before the court to satisfy their burden of production and to warrant review of the summary judgment motion itself.

### B. *Standing to Sue*

The concept of standing relates to the nature and sufficiency of a litigant's concern with the subject matter of the action. In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Court stated the question of standing "is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth* at 501, 95 S.Ct. at 2206. Standing also measures the plaintiff's claim against certain constitutional and prudential limitations with regard to access to federal ... courts. *National Wildlife Federation v. Burford*, 871 F.2d 849 (9th Cir.1989).

■ There are three elements or requirements of standing. The plaintiff must show: 1) an actual or threatened injury; 2) which is fairly traceable to the defendants alleged, illegal activity; and 3) which is likely to be redressed by the requested relief. *Valley Forge Christian College v. Americans for Separation of Church and State*, 454 U.S. 464, 473, 102 S.Ct. 752, 758,

70 L.Ed.2d 700 (1982); *Alaska Fish & Wildlife Federation v. Dunkle*, 829 F.2d 933, 937, *cert. denied*, 485 U.S. 988, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988).

█ The plaintiffs have alleged more than a mere chilling of their first amendment rights. Plaintiffs have alleged a decrease in religious participation and attendance at church services, a suspension of Bible study classes, and the diversion of pastoral time and energy to manage the distrust, fear, and uncertainty of anxious church members. See Declarations of James A. Oines, Pastor of Alzona Evangelical Lutheran Church, Susan E. Parrott, Clerk of the Session of Southside Presbyterian Church, Q. Gerald Roseberry, Pastor of the Camelback United Presbyterian Church, and Eugene D. Lefebvre Pastor of Sunrise United Presbyterian Church. These declarations state more than a "subjective chill" under the first amendment, they established a cognizable injury "likely to be redressed by a favorable decision." *Meese v. Keene*, 481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987). In this instance, plaintiffs are alleging violations of their first amendment rights of free exercise. Plaintiffs' declarations establish that their congregants have suffered distrust, withdrawal, and fear arising from the infiltration to their churches. Plaintiffs aver, and there is little doubt, as to the consequences arising from the acts of the various defendants. After a review of the foregoing, the court finds that plaintiffs have suffered an actual, legally cognizable injury which is subject to redress in this action. Accordingly, the court further finds that plaintiffs have satisfied the three prong test for standing as such injuries were not speculative, but direct and palpable.

### C. *Mootness*

The Ninth Circuit expressed concern that the issues presented may be moot and remanded the case for such a determination because the appellate panel was "ill-equipped to decide" *Church*, 870 F.2d at

529, if the type of injuries suffered by Churches would be likely to re-occur.

█ "A moot action is one where the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir.1986) (citations omitted). Federal courts lack jurisdiction in moot cases because the "case or controversy" requirement is not met. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 104 S.Ct. 373, 376, 78 L.Ed.2d 58 (1983). Plaintiffs bear the burden of demonstrating that a reasonable "credible threat" exists that they will be subject to the specific injury for which they seek relief. *Kolendar v. Lawson*, 461 U.S. 352, 355, n. 3, 103 S.Ct. 1855, 1857, n. 3, 75 L.Ed.2d 903 (1983); *Sample*, 771 F.2d at 1342. "The 'mere physical or theoretical possibility' of a challenged action again affecting plaintiff is not sufficient." *Sample*, 771 F.2d at 1340 (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)). "The likelihood of the injury reoccurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." *Sample*, 771 F.2d at 1340; *Preiser v. Newkirk*, 422 U.S. 395, 402–403, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975). The court must be satisfied that there is a "present controversy as to which effective relief can be granted." *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241, 1244 (9th Cir.1988).

█ Based on a review of the relevant facts in this case, the court concludes the case is not moot because the government asserts it has the right, assuming it complies with the fourth amendment, to conduct covert investigations of criminal activity within churches. Because the government has taken a position that it can continue to pursue criminal investigations in this manner, plaintiffs have no guarantee the government conduct will not reoccur causing further injury.[2] As for the pro-

---

**2.** The government stipulated that these types of activities could re-occur. Although the November 14, 1989, stipulation can not create jurisdiction as a matter of law, the parties can create a

spective nature of any such relief, as long as the court can grant *any* effective relief, the case is not moot. *Northwest Environmental*, 849 F.2d at 1245 (emphasis in original). The parties stipulated that the facts in this case could re-occur. As this stipulation answers a question raised by the Ninth Circuit in the affirmative with regard to whether any injury could be said to reoccur, the case presents a situation likely to re-occur and, hence, the case is not moot.

### D. *Declaratory Relief*

 Declaratory relief is fundamentally different from other types of relief, and may be appropriate even when an injunction is not. Fed.R.Civ.P. 57; *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985). The decision to grant declaratory relief is within the sound discretion of the trial court, *Olagues*, 770 F.2d at 803, and "[t]here is a considerable difference between *ordering* a government official to conduct his activities in a certain manner, and simply *pronouncing* that his conduct is unlawful and *should* be corrected." *Id.* at 803 (emphasis in original).[3]

28 U.S.C. § 2201 provides that in an actual controversy within its jurisdiction, and upon the filing of an appropriate pleading, the court may declare the rights and other legal relations between interested parties. Any judgment entered as such shall be final and reviewable. 28 U.S.C. § 2201. As plaintiffs have established the requisite elements of standing, the court concludes the injury could re-occur, and the case is not moot, it is appropriate to entertain the merits of the partial summary judgment motion.

### DISCUSSION

Churches seek a declaration from this court that the government has violated their first amendment rights of free-exer-

cise of religion by sending undercover informants into church services and church-sponsored activities. The Churches argue that covert government surveillance of worship services without probable cause to believe a crime is being committed violates the free exercise clause of the first amendment.

Although the Churches argue they are seeking relief under the first amendment and request that this court divorce the analysis between the first and fourth Amendments, framing the issue in this manner necessitates a discussion of the protections afforded by the fourth amendment to the Constitution. It is difficult to discuss the merits of an action involving covert government surveillance alleged to have been predicated upon less than probable cause without implicating the fourth amendment. The first amendment protects people and interests against intrusion or infringement. It is not generally a limitation on the government in the same manner or to the same degree that the fourth amendment operates to limit actions of government officials or agents. When the focus of a discussion becomes whether to limit the government's authority to conduct criminal investigations, the fourth amendment is triggered more directly than the first amendment simply because the fourth amendment offers greater and more profound protection. This interplay between the first and fourth Amendments is critical because the Churches seek relief under the first amendment, inviting this court to rule that the first amendment affords them protection which is greater than or different from the protection offered by the fourth amendment. Moreover, even though some courts have been able to divorce a discus-

---

factual setting which states the events alleged in the complaint could result again and which compels this court to conclude the case is not moot.

**3.** Notwithstanding the distinctions set forth above, it should be noted that "the practical effect of [injunctive and declaratory] relief will be virtually identical." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45

L.Ed.2d 648 (1975); *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688. In a context where federal agencies are the defendants, declaratory relief is "the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court." *Sanchez–Espinoza v. Reagan*, 770 F.2d 202, 208 n. 8 (D.C.Cir.1985).

sion of the first and fourth amendments,[4] the court cannot do so in this instance. In the case at bar, defendants are relying on the fourth amendment as a defense to conduct that plaintiffs claim impinged upon their first amendment rights. And while the government seeks to justify its investigatory methods of the Sanctuary Movement as purely a matter of fourth amendment jurisprudence, this argument also misses the point. The court must analyze the issues raised under both the first and fourth amendments because both are germane.

## A. The Fourth Amendment

 The fourth amendment to the Constitution protects people from unreasonable searches and seizures of their persons and things. It provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. It is well settled that the fourth amendment protects an individual's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1976). The determination of whether an intrusion is unreasonable depends upon an individual's actual, subjective expectation of privacy and whether that expectation is objectively reasonable. *United States v. Basile*, 569 F.2d 1053 (9th Cir.), *cert. denied* 436 U.S. 920, 98 S.Ct. 2268, 56 L.Ed.2d 761 (1978). The individual must "have exhibited an actual (subjective) expectation of privacy, and second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 362, 88 S.Ct. at 516 (Harlan, J., concurring).

 The fourth amendment protections of reasonable expectations of privacy, are of course, not absolute. The Supreme Court has continually permitted "consensual recording of conversations without warrants." *Aguilar*, 883 F.2d at 697 (citing *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)); *United States v. White*, 401 U.S. 745, 91 S.Ct.

1122, 28 L.Ed.2d 453 (1971); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The rationale behind these cases presupposes the speaker had a legitimate expectation of privacy but for the informer's presence. *Hoffa*, 385 U.S. at 307, 87 S.Ct. at 413; *White*, 401 U.S. at 749, 91 S.Ct. at 1125.

*Hoffa* and *White* are particularly relevant to the case at bar. In *Hoffa*, the court held that the fourth amendment does not "protect[ ] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa*, 385 U.S. at 302, 87 S.Ct. at 413. In *Hoffa*, a government informer testified about conversations with the defendant. The Court declared that a warrant was not required because the informer "was in the [hotel] suite by invitation, and every conversation ... was either directed to him or knowingly carried on in his presence." *Hoffa*, 385 U.S. at 302, 87 S.Ct. at 413.

In *White*, the Court upheld the denial of a motion to suppress monitored conversations of drug transactions between a government informer and the defendant. Reviewing *Hoffa*, the Court declared that "however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the fourth [if] the colleague is a government agent...." *White*, 401 U.S. at 749, 91 S.Ct. at 1125.

These cases support the theory that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–744, 99 S.Ct. 2577, 2581–82, 61 L.Ed.2d 220 (1979).

The *Aguilar* court reviewed the record on appeal and these Supreme Court cases, and concluded that "[g]iven this unwaivering line of precedent, it is clear that appellants' [Churches] arguments that they had a legitimate expectation of privacy *against state scrutiny* is inimical to established fourth amendment doctrine." *Aguilar*, 833 F.2d at 669 (emphasis in original). The

---

**4.** See *United States v. Citizens State Bank* 612 F.2d 1091, 1093 (8th Cir.1980); In re *First National Bank, Englewood, Colo.*, 701 F.2d 115 (10th Cir.1983).

Ninth Circuit added that "the Supreme Court unmistakably declared that persons have no expectations of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting. The court has recognized that legitimate law enforcement interests require persons to take the risk that those with whom they associate may be government agents." *Id.* at 703.[5]

 Although the fourth amendment is implicated in this factual situation, both Supreme Court and Ninth Circuit precedent is plain and uncontroverted: the fourth amendment does not apply to provide the Churches with protection which will limit the activities of the government in entering and conducting investigatory operations because such activity is not a search under the authority of the courts. As the government's activity does not constitute a search, any relief which may be offered to the Churches must come from the first amendment.

B. *The First Amendment*

 The first amendment to the constitution provides in part that "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I. The government may only impinge upon "religious liberty by showing that the challenged conduct is the least restrictive means of achieving a compelling state interest." *Thomas v. Review Bd. of Indiana Employment Sec.,* 450 U.S. 707, 719, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *United States v. Lee,* 455 U.S. 252, 258, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); *Wisconsin v. Yoder,* 406 U.S. 205, 214–15, 92 S.Ct. 1526, 1532–33, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398,

403, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963); *Callahan v. Woods,* 736 F.2d 1269, 1273 (9th Cir.1984).

 In order to determine whether plaintiffs' free exercise rights were violated, the court must examine the challenged conduct and the relevant facts in light of a two-part test. First, the court must evaluate and balance the individual interest against the state interest at issue. The second prong of the test requires the court to review the government's conduct to ensure that the least restrictive means available were employed to achieve the legitimate interest of the government. This ensures that the government interest is narrowly tailored to the government conduct. *Shelton v. Tucker,* 364 U.S. 479, 489, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

1. Compelling State Interest

Plaintiffs assert the government cannot demonstrate a compelling government interest which permitted the intrusion into the church services. Plaintiffs argue under *Sherbert,* the government cannot establish a "grave abuse" which indicates that a paramount interest exists. *Sherbert v. Verner,* 374 U.S. at 407, 83 S.Ct. at 1795. Later cases have phrased this standard as simply a "compelling state interest," *Thomas,* 450 U.S. at 719, 101 S.Ct. at 1432, or a "state interest of sufficient magnitude," *Yoder,* 406 U.S. at 215, 92 S.Ct. at 1532. Regardless of the language used to quantify that requisite amount of state interest necessary to equal a compelling state interest, "[t]he government's interest in controlling immigration outweighs appellants' purported religious interest...." *United States v. Aguilar,* 883 F.2d 662, 696 (9th Cir.1989).[6] "The proposition that

---

**5.** *See also, Forster v. County of Santa Barbara,* 896 F.2d 1146 (9th Cir.1990) ("A person does not have a 'justifiable and constitutionally protected expectation that a person with whom one is conversing will not then or later reveal the conversation to the police.'" *Id.* at 1149, (citing *White* 401 U.S. at 745, 91 S.Ct. at 1122.)) In *Forster,* the court held that neither the officers undercover visits nor surreptitious recording of conversations with defendant violated defendants fourth amendment rights.

**6.** Plaintiffs' argue *Aguilar* (the criminal case which exposed the existence of the tape recordings) is not controlling on the court in this instance because: 1) *Aguilar* was a criminal case and a motion to suppress evidence does not preclude the filing of a subsequent civil suit, *Church of Scientology of California v. Linberg,* 529 F.Supp. 945 (D.C.Cal.1981); and 2) the earlier criminal disposition does not control because *Aguilar* was decided under fourth, not first amendment, principles.

the government has a compelling interest in regulating its border hardly needs testimonial documentation. The Court 'has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Aguilar,* 883 F.2d at 695, (citing *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953); *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977)).

Therefore, the government had a compelling state interest, based on boarder security and national sovereignty to conduct an investigation into the alleged unlawful activities of the Sanctuary Movement.

### 2. Least Restrictive Means

Even though the court has concluded the state interest in national sovereignty and the prohibition against illegal aliens entering this country is substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). "It is the 'Least Restrictive Means' inquiry which is the critical aspect of the free exercise analysis." *Callahan v. Woods,* 736 F.2d 1269, 1272 (9th Cir.1984).

In *Shelton,* the Supreme Court struck down an Arkansas statute requiring teachers to list any associational ties and financial support of organizations or groups to which the applicant belonged. The Court recognized the state had an interest in in-

vestigating and ensuring teacher competence, but the statute went far beyond its legitimate purpose because the information was not kept confidential, and many of the associational ties required to be listed had no bearing on professional or occupational competence. Although the state had a compelling interest in its educational system and the employees of that system, it did not devise a legislative scheme narrow enough to achieve those ends without overburdening constitutional rights.

In *Callahan,* the court reversed a grant of summary judgment for the government in an action in which the plaintiff argued that requiring social security numbers prior to receiving welfare benefits violated religious beliefs. The court stated the social security number regulations promoted a compelling state interest, but on the facts, the court could not conclude that requiring compliance with the social security numbering system was the least restrictive means of achieving the desired administrative result. *See also Gordon v. State of Idaho,* 778 F.2d 1397 (9th Cir.1985).

In *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir.) *aff'd* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1986), a time-place-and manner restriction of free speech case, the court identified a two-part test to determine if a regulation is narrowly tailored to a compelling state interest. The court concluded the government is required "to show both that there is a significant relationship between the regulation and the government interest, and that the least restrictive alternatives are inadequate to protect the government interest." *Watseka,* 796 F.2d at 1554.[7]

---

Plaintiffs' reliance on *Church of Scientology* is tenuous for this proposition. The *Church of Scientology* case held only that an adverse decision in a pre-indictment motion to return church property and a denial of a motion to suppress, did not have collateral estoppel effect in the bringing of a subsequent civil action. *Id.* at 954, 960. The issue here is not one of inability to file a subsequent suit because issues of fact or law were actually litigated and determined by final judgment, but the precedential value and controlling authority of a previous court decision. The Ninth Circuit opinion is on point,

and the standard of conduct and the interests under the first and fourth amendments are the same for both *Aguilar* and the present case. The distinction to be drawn between the civil and criminal contexts is the relief sought, which for purposes of determining the compelling state interest, is not relevant here.

**7.** The Ninth Circuit adopted the *Watseka* approach in *Project 80's, Inc. v. City of Pocatello,* 857 F.2d 592 (9th Cir.1988). After discussing the *Watseka* two part test, the court stated "summary affirmances by the Supreme Court are

Plaintiffs argue the least restrictive means available to the government was not the undercover infiltration of churches where informants surreptitiously tape-recorded religious services. Plaintiffs suggest the government could have "tailed" particular suspects, used trained law enforcement personnel to conduct witness interviews, or issued grand jury subpoenas to conduct investigation of the Sanctuary Movement.

Defendants strenuously object to plaintiffs characterization of the least restrictive means. The government argues plaintiffs overlook the nature of the investigatory activity and its purposes, i.e., to identify criminal activity and its participants, and to gain sufficient information to secure criminal convictions. The government further argues the methods which plaintiffs would have the government employ would hold the government's criminal surveillance operations hostage if potential subjects in the criminal investigation chose religious or political meetings as a venue to engage in illegal activity.[8] In essence, the government argues it can not effectively carry out its prosecutorial functions in such situations by tailing suspects, questioning witnesses, and using grand jury subpoenas. The *Aguilar* court noted "[a] search warrant requirement for undercover government agents to investigate an organization concededly engaging in protected first amendment activities indeed would prohibit law enforcement officials from using an indispensable method of criminal investigation appropriate in any other circumstances." *Aguilar*, 883 F.2d at 705.

The government maintains techniques to investigate suspected criminal activity are simply not the methods suggested by plaintiffs. The government cannot effectively gather the quality or quantity of evidence necessary, or validate evidence received by such tactics.

Applied to the *Watseka* test, the government has demonstrated a significant and intimate relationship between the conduct in which it engaged and the government interest sought to be achieved.

 The government, however, does not have unfettered discretion to conduct investigations and law enforcement activities. The first amendment limits the government's ability and authority to engage in these activities when groups are engaged in protected first amendment activities. There are "two limitations on the government's use of undercover informers to infiltrate an organization engaging in protected first amendment activities. First, the government's investigation must be conducted in good faith; i.e., not for the purpose of abridging first amendment freedoms." *Aguilar*, 883 F.2d at 705 (citing *Reporters Committee v. American Telephone & Telegraph*, 593 F.2d 1030 (D.C. Cir.1978) *cert. denied* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979) (first amendment does not afford reporters protection against good faith criminal investigations)). "Second, the first amendment requires that the under cover informers adhere scrupulously to the scope of the defendant's invitation to participation in the organization." *Aguilar*, 883 F.2d at 705 (citing *Pleasant v. Lovell*, 876 F.2d 787, 803–804 (10th Cir. 1989)).

In view of the forgoing,

IT IS ORDERED granting in part and denying in part plaintiff Churches' Motion for Partial Summary Judgment by declaring the rights of the parties involved as follows:

*Employment Div. Dept. Of Human Res. v. Smith*, —— U.S. ——, 110 S.Ct. 1595, 1603, 108 L.Ed.2d 876 (1990) is to allow the government to engage in such activity. "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.'" *Id.*

binding on us." *Project 80's*, 857 F.2d at 598, and went on to explicitly adopt the *Watseka* approach.

**8.** Plaintiffs offer unsatisfactory alternatives to the investigatory measures, asking this court to effectively rule that otherwise prohibited conduct is free from governmental regulation if it is accompanied by religious conviction. Yet "[t]he sounder approach, and the approach in accordance with the vast majority of our precedents,"

Plaintiffs, in the free exercise of their constitutionally protected religious activities, are protected against governmental intrusion in the absence of a good faith purpose for the subject investigation. The government is constitutionally precluded from unbridled and inappropriate covert activity which has as its purpose or objective the abridgment of the first amendment freedoms of those involved. Additionally, the participants involved in such investigation must adhere scrupulously to the scope and extent of the invitation to participate that may have been extended or offered to them.

This declaration of first amendment principles does not embrace a requirement for prior review or approval of any such activity on behalf of the investigating agency or governmental office. A warrant is unnecessary in situations where an undercover government agent is invited to participate in suspected criminal activities, although such activities may occur while an organization is "concededly engaging in protected first amendment activities" as such a requirement would "prohibit law enforcement officials from using an indispensable method of criminal investigation appropriate in any other circumstances." *Aguilar,* 883 F.2d at 705.