**John M. JENKINS**

v.

**ORKIN EXTERMINATING COMPANY, INC.**

Civ. A. No. B-85-721-CA.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 30, 1986.

M. Diane Dwight, Provost, Umphrey, Swearingen & Eddins, Port Arthur, Tex., for plaintiff.

Philip Babin, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for defendant.

COBB, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Came to be considered the above styled cause, and the court, having heard and considered the evidence presented and arguments of counsel, enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, John M. Jenkins (Jenkins), was employed by the defendant Orkin Exterminating Company, Inc. (Orkin) at the Beaumont branch office on or about July 19, 1977. Jenkins was initially involved in various job functions, including servicing customers and acting as a service manager, but later became a salesman during the calendar year 1980.

2. In March of 1981, Pamela Buckner, was employed by Orkin.

3. During Ms. Buckner's employment at Orkin, she confided in Jenkins that she was being pressured to date Al Cardinal, the Beaumont branch manager. Buckner related to Jenkins that Cardinal had offered to set her up in an apartment and had

implied that her willingness to respond to him and his overtures would determine her job success.

4. Based upon this information, Jenkins formed the belief that Buckner had been the victim of unwanted and unwelcome sexual attention.

5. In opposition to Cardinal's actions, Jenkins contacted Orkin's district manager, John Gilder, and informed him that Cardinal was placing unwanted and unwelcome pressure on Buckner to have a relationship with him. In his complaint, Jenkins felt that the district office should investigate the situation in an effort to correct the perceived unlawful employment practices of Cardinal and vindicate Buckner's employment rights. This telephone communication took place from Jenkins' home on a Saturday prior to May 18, 1981.

6. Following Jenkins' complaint to Gilder, Cardinal was summoned to report immediately to Gilder's office in Houston to discuss the complaint. Gilder divulged to Cardinal that Jenkins had made the complaint. During the course of this discussion, Cardinal admitted that he had "been out" with Ms. Buckner on one occasion, but perceived this conduct to have been a "mistake." Gilder informed Cardinal that if he failed to end his further attempts to date Buckner, he would be terminated from Orkin. Cardinal assured Gilder that no further social encounters would occur between Buckner and himself.

7. Gilder never contacted Buckner concerning the Jenkins report.

8. The precise date of the telephone conversation between Jenkins and Gilder cannot be established with certainty, as well as the Gilder/Cardinal meeting. However, this court finds that the Gilder/Cardinal meeting occurred after Jenkins' telephone call, but before May 18, 1981. In this regard, this court takes judicial notice of the 1981 calendar, and notes that May 18, 1981, fell on Monday, and May 22 fell on Friday.

9. On May 18, 1981, Buckner resigned after being informed by Cardinal that she would be terminated effective May 22, 1981.

10. On the day of Buckner's termination, Cardinal and Jenkins engaged in a verbal confrontation concerning Jenkins' report to Gilder about Buckner. During that conversation, Cardinal advised Jenkins that he did not approve of him "going over his head" to make such a complaint to the district manager. Jenkins stated that he felt Cardinal had been wrong and did not regret what he had done in the defense of Buckner.

11. Prior to Buckner's termination, Jenkins used profanity and abusive language toward Cardinal in a loud and highly emotional face-to-face confrontation regarding a dispute in reference to the automobile of another Orkin employee, Mr. Perkins.

12. On May 22, 1981, Jenkins was given a corrective interview for failure to turn in pre-lists. This corrective interview notice was the first and only such disciplinary notice that was placed in Jenkins' file. Jenkins was reprimanded regarding the number of proposals that he had turned in for the period of May 1, 1981, to May 22, 1981. Jenkins made every effort to improve, and the sales figure for June, 1981, increased after the corrective interview.

13. Orkin had maintained a corporate-wide written progressive discipline policy in which employee problems were required to be dealt with in the following manner:
   a. First occurrence—verbal warning.
   b. Second occurrence—written warning, using the corrective action report.
   c. Third occurrence—three-day suspension without pay.
   d. Fourth occurrence—Termination.

14. Following the corrective interview, Jenkins was terminated on or about June 30, 1981.

15. During his tenure at Orkin, Jenkins had received numerous employee awards as an outstanding employee. These awards were both in his capacities as a service employee, and as a sales employee. During the last fiscal year of his employment for Orkin, Jenkins had achieved the

distinction of being in the President's Club, a high honor given to salesmen for outstanding sales performance. Prior to that time, Jenkins had twice been named an outstanding employee in the entire western district of Orkin, and had received numerous monthly awards for his high performance.

16. In the month of his discharge, Jenkins had been the fifth highest performing salesman in the south Texas district. Prior to his report regarding Buckner, his personnel record was totally void of any corrective interview or any notations about attitude problems, lateness or failure to comply with any company procedures or requirements.

17. Orkin has articulated the following legitimate reasons for the discharge of Jenkins:

   a. That he failed to perform his jobs in a satisfactory manner.

   b. That he failed to complete paper work and comply with company procedures regarding same.

   c. That he was late for work.

   d. That he missed sales appointments.

   e. That he undercharged customers.

   f. That he had a personality conflict with Cardinal and had "publicly cursed him" on one occasion.

   g. That, although Jenkins verbally attacked Cardinal, Jenkins was not immediately terminated because no employee was qualified to take Jenkins' place.

■ 18. This court finds that since the time of Jenkins' discharge, he has sustained a loss of earnings. Jenkins has sustained a difference in the amount of money he would have earned in all reasonable likelihood had he remained at Orkin, and the amount of money he has actually made in the past five years since his discharge.

## CONCLUSIONS OF LAW

1. Jurisdiction is proper in this federal court pursuant to the operation of 42 U.S.C. § 2000a, et seq.

■ 2. Plaintiff Jenkins has made a prima facie retaliation case under § 704(a) of Title VII. *Whatley v. Metropolitan Atlanta Rapid Transit*, 632 F.2d 1325 (5th Cir.1980). Jenkins has shown the following:

   a. That he has engaged in statutorily protected opposition to an alleged unlawful employment practice made unlawful under Title VII. His complaints on behalf of Buckner were a form of lawful opposition to employer activity which he reasonably believed as unlawful under Title VII. *Payne v. McLemore's Wholesale and Retail Stores*, 654 F.2d 1130, 1140 (5th Cir.1981).

   b. That adverse action occurred following his protective activity. Cardinal undertook a pattern of harrassment which culminated in Jenkins' termination. *DeAnda v. St. Joseph's Hospital*, 671 F.2d 850 (5th Cir.1982).

   c. That a causal link exists between Jenkins' opposition to the alleged unlawful employment practices and his termination. Cardinal was aware of Jenkins' activities and took adverse action against Jenkins within a relatively short time justifying the inference of a causal link. *Payne, supra* at 1141, and n. 13.

■ 3. The right of a female employee to be free of sexual harrassment in the work place is a right protected under Title VII. Sexual harrassment extends to the denial of employment of privileges based on a failure to engage in sexual conduct as well as sexual conduct or overtures of such a nature where the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating a hostile or intimidating work environment. As such, the right to employment unfettered by acts of sexual harrassment is guaranteed under Title VII. *Meritor Savings Bank v. Benson*, —— U.S. ——, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ 4. Section 704(a) of Title VII provides in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter.

As such, the court finds and concludes that sexual harrassment is an unlawful practice made unlawful under Title VII and that Jenkins' actions in telephoning the district manager were in opposition to the alleged unlawful employment practice.

5. Under prevailing Fifth Circuit authority, it is not necessary for the court to conclude whether or not the alleged complaint regarding sexual harrassment was in fact a violation of Title VII or not. *Payne v. McLemore's Wholesale and Retail Stores*, 654 F.2d 1130, 1138 (5th Cir.1981). The court finds and concludes that Jenkins held a good faith belief that the complaint was a genuine one and one that warranted investigation. Further, this court finds and concludes that Jenkins had a reasonable belief that a violation of Title VII had occurred.

6. This court finds and concludes that Jenkins' opposition activities were not disruptive, to the employment sphere, and were appropriate as to their time, place and manner.

7. This court finds and concludes that Orkin, by and through its agents, Gilder and Cardinal, was aware that Jenkins had reported the allegations concerning sexual harrassment and had, therefore, engaged in protected activities.

8. This court is convinced that "but for" the protected activities of Jenkins, he would not have been terminated from employment. *Jack v. Texaco Research Center*, 743 F.2d 1129 (5th Cir. 1984). The court bases this conclusion upon the following evidentiary matters:

a. Jenkins had not been disciplined prior to his engaging in protected activities for any of the alleged deficiencies in his performance.

b. Although there is some evidence indicating that the Orkin disciplinary

procedure may be advisory, it is significant to this court that Orkin did not follow this policy and procedure in terminating Jenkins, indicating that some other intent other than general business practice motivated its actions.

c. The proximity in time of the Jenkins discharge and notice of corrective interview with the report to Gilder justifies the conclusion that but for the protected activity, the discharge would not have occurred.

9. Further, this court concludes that the discharge would not have occurred at the time that it did if Orkin had followed its own personnel policy. In other words, in the event Orkin was following its own business practices without regard to any impermissible motivation, Jenkins would have had a three-day suspension prior to a termination. As such, Jenkins has carried his burden in proving a prima facie retaliation case under § 704.

10. Once a prima facie case has been established, the burden of going forward then shifts to the defendant to "articulate" some legitimate non-discriminatory reason for the employer's discharge. *See Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir.1979); *Falcon v. General Telephone Co. of the Southwest*, 626 F.2d 369 (5th Cir.1980). Once this step has been accomplished, the court must inquire whether an employer's stated reasons for the employment decision were mere pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668 (1973).

11. As to the legitimate reasons for Jenkins' discharge, this court finds the following defendant's contentions pretextual:

a. Jenkins failed to make his draw three out of the last six months of his employment: The evidence indicated that although an employee could be terminated for this reason, Jenkins had failed to make his draw in the past with no discharge. Further-

more, Cardinal had never terminated other salesmen on this ground. This condition was tolerated at Orkin and should not be considered a ground for discharge in the present case.

b. Jenkins disrupted sales meetings: Although it was demonstrated that Jenkins frequently voiced his opinion at said meetings in disagreement with Orkin procedure, the evidence also demonstrated that it was the prerogative of the employee to do so, and that none of the Jenkins confrontations required a discharge.

c. Jenkins failed to complete paper work, comply with company procedures, was late for work, missed sales appointments, and undercharged customers: Evidence appears to the contrary. Even Orkin admits that Jenkins was the best salesman and that, even though Jenkins may have acted in the above manner, his activities were tolerated by Orkin.

d. Jenkins lacked creativity: No evidence appears to substantiate this contention.

e. Jenkins used extremely provocative and abusive language toward his employer in a loud and highly emotional face-to-face confrontation: Evidence appears contrary to this contention. The "cursing incidents" occurred while Buckner was still employed. Since Buckner's constructive discharge occurred on May 18, 1981, the Jenkins/Cardinal confrontation occurred prior to this date. It is significant to this court that in Cardinal's corrective interview report of Jenkins on May 22, 1981, and in Cardinal's termination letter, Cardinal failed to mention the cursing incident. Thus, the cursing incident appears not to be the motivating factor in Jenkins' termination. This court also finds no merit to Orkins' contention that Cardinal was ignorant of the Texas doctrine of employment at will as a basis for not listing the cursing incident as a reason for termination. It appears to have been a post-litigation strategy of the defendant to substantiate Jenkins' termination.

11. Thus, this court has consider Jenkins' performance as a salesman and notes that a salesman of Jenkins' caliber would not have been terminated for said grounds absent some other motivation.

12. Therefore, Jenkins has carried his burden of proof and persuasion, and the court finds and concludes that Orkin, acting by and through its agents, has violated Title VII and Section 704(a).

13. As such, this court finds and concludes that Jenkins is entitled to back pay in the amount of $21,906.56. Said figure is based upon the following:

| | | |
|---|---|---|
| 1980 Total Income | $26,452.25 | |
| 1981 Loss of Earnings | $26,452.25 − $24,222 = (1981 Total Income) | $ 2,230.25 |
| 1982 Loss of Earnings | $26,452.25 − $19,901 = (1982 Total Income) | $ 6,551.25 |
| 1983 Loss of Earnings | $26,452.25 − $13,327.19 = (1983 Total Income) | $13,125.06 |
| TOTAL LOSS OF EARNINGS | | $21,906.56 |

This court has not included the 1984 figures since Jenkins established a business unrelated to his sales activity at that time.

14. In addition, as a prevailing party, Jenkins will be entitled to recover a reasonable attorney's fee for services rendered by the plaintiff's attorney. Pursuant to stipulations contained within the pretrial order, plaintiff's counsel is hereby ORDERED and instructed to submit within 30 days of entry of these findings of fact a complete detailing of time expended in the case in appropriate affidavits for the court's use in awarding an appropriate attorney's fee.