United States Court of Appeals,

Fifth Circuit.

No. 93-2683.

Jolene NOWLIN, et al., Plaintiffs-Appellants,

v.

RESOLUTION TRUST CORPORATION, et al., Defendants,

Resolution Trust Corporation, Litton Mortgage Servicing Center, Inc., and Mitchell Jobe & Co., Defendants-Appellees.

Sept. 29, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, KING and WIENER, Circuit Judges.

GOLDBERG, Circuit Judge:

This case resulted from the termination of employment of nine former employees at a failed financial institution. These individuals ("plaintiffs") sued the Resolution Trust Corporation ("RTC"), which was the receiver of the institution, and two of the RTC's personnel contractors, Litton Mortgage Servicing Center, Inc. ("Litton") and Mitchell Jobe & Company ("Mitchell Jobe") (together, the "defendants"). The plaintiffs sought relief on several causes of action. The first was retaliatory discharge in violation of 12 U.S.C. § 1831j (the "Banking Whistleblower Act"). The second and third were violations of 42 U.S.C. § 2000e-3 ("Title VII"), for sexual discrimination and retaliatory discharge. Finally, the plaintiffs claimed a breach of oral contract under Texas common law. The district court granted summary judgment in favor of the defendants on all claims, and the plaintiffs appealed to this

1

court. We partially affirm and partially reverse the district court's grant of summary judgment and remand for further proceedings.

I. Facts[1]

Columbia Savings Association, Nassau Bay, was a federally insured, state-chartered institution. In December 1989, it was placed in the conservatorship of the RTC. The institution was succeeded by Columbia Federal Savings Association ("Columbia") when the Federal Home Bank Loan Board issued it a federal charter. The change in name did not spell a change in fortune, and in September 1991 the RTC put Columbia into receivership and picked up the reins.

The RTC contracted with Mitchell Jobe to meet some of Columbia's staffing needs. Mitchell Jobe hired seventeen former Columbia employees for the receivership. The plaintiffs in this case are nine of those individuals. The plaintiffs signed employment contracts with Mitchell Jobe, which stated that employment would be "for an unspecified amount of time and for limited projects of a temporary nature...." The RTC paid Mitchell Jobe a fee in addition to the amount of the temporary employees' wages.

The RTC also contracted with Litton to be a Resolution

---

[1]Because the plaintiffs are appealing the district court's grant of summary judgment to the defendants, we view the evidence in the record in the light most favorable to the plaintiffs. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Trevino v. Celanese Corp.,* 701 F.2d 397, 406 (5th Cir.1983) (citing *Joplin v. Bias,* 631 F.2d 1235, 1237 (5th Cir.1980)).

Assistance Contractor (RAC). Litton's task was twofold. First, Litton was to wind down Columbia's affairs by returning assets to Columbia's former customers and extinguishing Columbia's liabilities. Second, and most important in this case, Litton was to supervise the day-to-day activities which engaged the employees at Columbia. Litton installed a three-member management team to accomplish these goals. The RTC compensated Litton according to number of hours the Litton team worked.

In September, Columbia's employees were gathered and told about the Columbia's transformation into a receivership. Representatives of the RTC and Litton encouraged the plaintiffs to accept positions with the receivership. No one disputes that the plaintiffs entered "at will" employment contracts with Mitchell Jobe. However, the plaintiffs claim they also entered oral contracts with the RTC and Litton guaranteeing them four months of employment plus two weeks severance pay. During the September gathering, Tom Emerson, the manager of the Litton team, represented to the plaintiffs that their employment would be for at least four months, that they would receive two weeks severance pay, and that if they refused the job, he would challenge their applications for unemployment benefits. The RTC and Litton dispute plaintiffs' claim that an oral contract arose and insist that the plaintiffs' only contracts were those with Mitchell Jobe.

The plaintiffs and Litton had a difficult relationship from the start. One of the plaintiffs, Jolene Nowlin, alleged that Emerson began a campaign of sexual harassment soon after Litton was

3

installed at the receivership.  In addition, Emerson orchestrated a scheme to increase Litton's fees.  Emerson instructed the plaintiffs to inflate their time sheets by adding three to three and a half hours to the amount of time they actually worked.  He stated that he would verify the falsified time sheets.  The plaintiffs complied at first, but then reported the time sheet fraud and sexual harassment to the RTC.  The plaintiffs also claimed that the Litton team was unable to perform their management functions effectively due to ignorance and incompetence.

After an investigation by members of the RTC and Litton, the entire Litton team was replaced with one headed by Carolyn McDonald.  However, this did not ease the friction in the receivership's operation.  Specifically, there were confrontations regarding the plaintiffs' responsibilities.  In addition, the plaintiffs complained to the RTC that the new team was also ineffective.  Nowlin complained about the Litton team to an RTC official, Robert Van Buren.  Van Buren later met with Litton and Mitchell Jobe representatives, and asked Mitchell Jobe to discharge Nowlin.  Linda Wood, the Mitchell Jobe personnel manager, refused, stating that Mitchell Jobe preferred to build a documented file upon which to base Nowlin's termination.

RTC officials met on Friday October 18, 1991 and decided to accelerate Columbia's "final resolution" date and merge Columbia's assets and liabilities with another failed institution.  Litton's and the plaintiffs' employment would be terminated, and Columbia would be closed.  Later that afternoon, representatives from the

4

RTC and Litton went to Columbia, gathered the employees, and told them to pack their belongings and to never return. The plaintiffs, in turn, filed this lawsuit.

II. Standard of Review for Summary Judgment

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* This requires that a plaintiff "make a showing sufficient to establish the existence of an[y] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for reviewing a summary judgment on appeal is the same as that applied by the district court. *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986); *see also Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 956 (5th Cir.1993) (reviewing grant of summary judgment in an employment discrimination case). We review a grant of summary judgment *de novo. Norman v. Apache Corp.,* 19 F.3d 1017 (5th Cir.1994).

While the record reveals a complex pattern of criss-crossing motions, we concern ourselves only with the last few. Mitchell Jobe filed a motion to dismiss the plaintiffs' second amended complaint for failure to state a claim upon which relief can be

granted. Litton filed no similar motion. The district court, *sua sponte,* treated Mitchell Jobe's motion as one for summary judgment. The court issued a two-page opinion and order granting partial final judgment in favor of Mitchell Jobe and Litton. The district court stated that the RTC alone was the plaintiff's "employer in-fact," and that the plaintiffs would therefore take nothing from Mitchell Jobe or Litton.[2]

Shortly after the district court entered this order, the RTC moved for summary judgment. The plaintiffs resisted, filing their own motion for summary judgment against the RTC and Litton.[3] The district court held a hearing on these motions. At the end of the hearing, the district court granted summary judgment in favor of the RTC on all claims except the Texas common law oral contract claim. He later ruled in favor of the RTC and Litton on that issue, too. We will review the grant of summary judgment on each issue in turn.

III. The Banking Whistleblower Statute, 12 U.S.C. § 1831j

In examining the plaintiffs whistleblowing claim, we must examine the patchwork of legislation woven by Congress to protect our nation's banking system. The plaintiffs have asked us to apply 12 U.S.C. § 1831j, a statute which focuses on the Federal Deposit

---

[2]We assume the district court meant that the RTC was the plaintiffs' employer *at law,* as the parties never disputed that Mitchell Jobe was the employer *in fact* in this case. Mitchell Jobe had written employment "at will" contracts with the plaintiffs, paid the plaintiffs, and furnished the plaintiffs to the RTC and Litton.

[3]The plaintiffs moved for summary judgment against Litton on oral contract grounds.

Insurance Corporation ("FDIC"), to the RTC and its contractors. Section 1831j has been amended twice since October 1991,[4] when the alleged misconduct occurred.

The plaintiffs claim to be the victims of retaliatory discharge in violation of § 1831j.[5] The applicable version of § 1831j prohibits two types of actors from retaliating against whistleblowers. The first type consists of "insured depository institutions," defined as "any bank or savings association the deposits of which are insured by the [Federal Deposit Insurance] Corporation...." 12 U.S.C. § 1813(c)(2). The second type consists of "Federal banking agenc[ies], Federal home loan bank[s], and the Federal Reserve Bank[s]." Pub.L. No. 102-242, § 251, 105 Stat.

---

[4]The section was amended by the FDIC Improvement Act of 1991, Pub.L. No. 102-242, § 251, 105 Stat. 2331, 2332 (1991), and by Pub.L. No. 103-204, § 21(a), 107 Stat. 2406 (1993).

[5]The 1991 version of this section, which Congress made retroactive, covers the time period of the relevant conduct. *See* Pub.L. No. 102-242, § 251(a)(4) (1991) ("Paragraph (2) of section 33(a) of the Federal Deposit Insurance Act [12 U.S.C. § 1831j(a)(2) ] (as added under the amendment made by paragraph (1)) shall be treated as having taken effect on January 1, 1987, and for purposes of any cause of action arising under such paragraph (as so effective) before the date of the enactment of this Act [December 19, 1991], the 2-year period referred to in section 33(b) of such Act [12 U.S.C. § 1831j(b) ] shall be deemed to begin on such date of enactment."). The 1991 version changed the original statutory language in only minor ways which are irrelevant to the case at hand.

The third version of the statute has a broader scope than the first two. That version, passed in 1993, nearly two years after the whistleblowing conduct in this case, expanded the reach of § 1831j to include "any person who is performing, directly or indirectly, any function or service on behalf of the [Federal Deposit Insurance] Corporation." Pub.L. No. 103-204, § 21(a), 107 Stat. 2406 (1993). Congress did not state that this section was retroactive.

7

2331, 2332 (1991). "Federal banking agencies" are defined as "the [Federal Deposit Insurance] Corporation, the Board of Governors of the Federal Reserve System, the Federal Housing Finance Board, the Comptroller of the Currency, and the Director of the Office of Thrift Supervision." Pub.L. No. 102-242, § 251(a).

Courts applying § 1831j have held that it only applies to the actors named in the statute. *See Hicks v. Resolution Trust Corporation,* 970 F.2d 378 (7th Cir.1992); *Homeyer v. Yorkville Federal Savings & Loan Association,* 1991 WL 274226 (S.D.N.Y.1991); *cf., Walleri v. Federal Home Loan Bank,* 1993 WL 566023 (D.Or.1993) (dismissing claim of retaliatory discharge under § 1831j because plaintiff reported alleged wrongdoings to institutions not listed in statute). We find the applicable statutory language to be plain on its face. It does not name the RTC, and the plaintiffs concede that Mitchell Jobe and Litton do not fall within either of the two categories of covered actors. Therefore, § 1831j does not apply in this case, because none of the defendants are named in the statutory coverage.[6] We affirm the district court's grant of summary judgment in favor of defendants on the § 1831j claim.

IV. Title VII

The next claim envisages Title VII's provisions.

---

[6]The subsequent actions of Congress reinforce our interpretation of the scope of § 1831j. In 1992, while this litigation was underway, Congress passed a whistleblowing statute specifically addressing the RTC and its contractors. *See* 12 U.S.C. § 1441a(q). The plaintiffs did not plead for relief under this provision. Congress apparently did not think § 1831j applied to the RTC, otherwise they would not have passed § 1441a(q). Section 1441a(q) does not apply to this case, because it was passed after the alleged impermissible conduct occurred.

Specifically, the plaintiffs argue that the district court wrongly concluded that Mitchell Jobe and Litton were not the plaintiffs' "employers" for Title VII purposes. In addition, the plaintiffs argue the district court wrongly granted summary judgment to the RTC on the Title VII issues.

First we address Mitchell Jobe's argument that summary judgment should be affirmed because Mitchell Jobe was not properly a party on the Title VII issue.[7] Mitchell Jobe summarized its argument for affirming summary judgment in its brief, stating "[p]laintiffs did not file charges with the EEOC [the Equal Employment Opportunity Commission] and, therefore, they have no standing to assert Title VII claims against Mitchell Jobe in federal court." Title VII requires charges to be filed with the EEOC against those who committed the allegedly unlawful conduct. 42 U.S.C. § 2000e-5(e). The plaintiffs admitted that they never filed such charges against Mitchell Jobe before the EEOC. Instead, the plaintiffs argue that their failure to file charges naming Mitchell Jobe is not lethal to their Title VII claims,[8] and does not necessarily prevent them from pursuing Mitchell Jobe in federal court. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that "filing a

---

[7]We have the authority to do this. *Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989) ("Summary judgment may be affirmed, regardless of the correctness of the district court ruling, when we find in the record an adequate, independent basis for that result.").

[8]Debra Boles, one of the plaintiffs, conceded she did not file a complaint against any of the defendants with the EEOC, and that therefore she cannot recover on Title VII grounds.

9

timely charge of discrimination with the EEOC was not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.") (footnote omitted).

Plaintiffs claim they should be excused from the filing requirement because the EEOC misled them about the nature of their rights. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 644 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989) (stating that one justification for tolling the period for filing charges with the EEOC would be if the EEOC misled the plaintiff). *Blumberg* also stated that the plaintiff bears the burden of demonstrating a factual basis to toll the period for filing charges. *Id.* The only references found in the record to anything misleading involve a statement by plaintiffs' counsel that "[t]he EEOC concluded that it would not accept complaints against Mitchell-Jobe because it was only a payroll service." This unsworn statement is found in a document filed with the district court entitled "Status Report with Respect to EEOC Complaints."

The district court failed to give ten days notice of its *sua sponte* motion to grant summary judgment[9], as required by Federal

---

[9]District courts may grant summary judgment *sua sponte,* "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554; *Judwin Properties, Inc., v. United States Fire Ins. Co.,* 973 F.2d 432, 436-37 (5th Cir.1992); *see also* Wright, Miller and Kane, *Federal Practice and Procedure* § 2720 (1994 Pocket Part).

Rule of Civil Procedure 56(c).[10]  This court has strictly enforced this notice requirement.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388 (5th Cir.1994)[11]; *Judwin Properties Inc.,* 973 F.2d at 437 (5th Cir.1992); *Powell v. U.S.,* 849 F.2d 1576, 1579 (5th Cir.1988) (stating that notice is critical "to insure that the nonmoving party had the opportunity to make every possible factual and legal argument.") (citing cases). Despite this strictness, however, this circuit has held that the

---

[10]The district court issued its opinion after Mitchell Jobe submitted a motion to dismiss the plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  That rule states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*"  (emphasis supplied).  The comment to Rule 12(b)(6) specifically states that the rule "insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment."  *Cf., Washington v. Allstate Insurance Co.,* 901 F.2d 1281, 1284 (5th Cir.1990).

[11]The *Leatherman* litigation has a long history.  The district court originally dismissed the action on the grounds that the plaintiffs failed to satisfy the "heightened pleading requirement" imposed by our circuit on claims arising under 42 U.S.C. § 1983.  In the alternative, the district court granted summary judgment against the plaintiffs.  *See* 755 F.Supp. 726 (N.D.Tex.1991).  This court affirmed the dismissal on the heightened pleading requirement grounds.  954 F.2d 1054 (5th Cir.1992).  The Supreme Court reversed and remanded.  --- U.S. ----, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).  Justice Rehnquist, writing for a unanimous court, invalidated the heightened pleading requirement in regard to § 1983 actions against municipalities.  *Id.* at ----, 113 S.Ct. at 1163.  On remand, the district court adopted its alternate holding and granted summary judgment against the plaintiffs.  The plaintiffs appealed again, and we affirmed.  28 F.3d 1388 (5th Cir.1994).

harmless error doctrine applies to a failure to provide notice under Rule 56(c). *Leatherman,* 28 F.3d at 1398; *Powell,* 849 F.2d at 1580 (citing *Western Fire Insurance Co. v. Copeland,* 786 F.2d 649 (5th Cir.1986)). The *Leatherman* court noted that the harmless error doctrine has recently been expanded.

> "When there is no notice to the nonmovant, summary judgment will be considered harmless if the nonmovant has not additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."

*Leatherman,* 28 F.3d at 1398 (quoting *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d 1398, 1403 n. 7 (citing *Powell* )).

In our recent cases, we have held that "[d]espite the strictness with which we enforce the notice requirement, the harmless error doctrine applies to lack of notice required by Rule 56(c)." *Leatherman,* 28 F.3d at 1398; *Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d at 1403 (stating that the district court abused its discretion by granting summary judgment without sufficient notice, but affirming outcome because the lack of notice was harmless error). We have held that the party seeking to avoid summary judgment must present specific evidence that creates a genuine issue of material fact, or at least identify how additional discovery would yield such an issue. *Leatherman,* 28 F.3d at 1399; *Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d at 1403. This evidence must have some present, existential character. "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories,

12

and admissions on file,' designate "specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Rivanna Trawlers Unlimited v. Thompson Trawlers Inc.,* 840 F.2d 236, 240 (4th Cir.1988) (noting that a party opposing summary judgment "may not rest upon mere allegations or denials of his pleading"); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo,* 841 F.2d 872, 876 (9th Cir.1987), *cert. denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988) (noting that the district court properly required nonmovant to make "sufficient showings" supporting essential elements of its case); *Presbyterian Church v. United States,* 752 F.Supp. 1505 (D.Ariz.1990) ("Legal memoranda and oral argument do not constitute evidence within the meaning of Rule 56(e), and cannot, by themselves, create a factual dispute sufficient to defeat a summary judgment motion where no other dispute exists.") (citations omitted). If the nonmovant fails to make such a showing, and the motion is otherwise appropriate, then the lack of notice will be considered harmless error, and summary judgment will be affirmed. *See Leatherman,* 28 F.3d at 1398-99; *Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d at 1403.

In this case, the plaintiffs failed to produce one shred of hard evidence to support their argument that it was not necessary to charge Mitchell Jobe before the EEOC. In addition, the plaintiffs failed to state what the evidence they wanted to present was or why they needed more time. Instead, the plaintiffs rely on one unsworn statement made by their attorney in a pleading. The

13

notice requirement of Rule 56(c) is not a license for a fishing expedition for evidence, and conjecture and conversation with the court are not a sufficient specific showing of solid evidence to shield one from summary judgment. *See Mitnik v. Cannon,* 789 F.Supp. 175, 176 (E.D.Pa.1992) (holding that unsworn statements and allegations "are not sufficient ... to raise a genuine issue of material fact" under Rule 56). Therefore, we affirm summary judgment in favor of Mitchell Jobe on the Title VII issues.

We now turn to the basic issue of determining the plaintiffs' employment status under Title VII. The district court stated that the RTC was the plaintiffs' "employer in-fact" in its order granting partial final judgment on the Title VII issues, holding that Mitchell Jobe and Litton were not the plaintiffs' employers.[12] The judge based this conclusion on the borrowed servant doctrine, citing two cases, *Denton v. Yazoo & M.V.R. Co.,* 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310 (1932) and *Perron v. Bell Maintenance & Fabricators,* 970 F.2d 1409, 1412 (5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1264, 122 L.Ed.2d 660 (1993). Both of those cases involved employee injuries, not discriminatory hiring and firing.

The borrowed servant doctrine is not applied in Title VII actions to determine employer status. The Fifth Circuit announced

---

[12]The district court repeated the conclusion that the RTC was the employer "for equal employment opportunity purposes" from the bench during the hearing on the cross motions for summary judgment filed by the RTC and the plaintiffs, stating "[Mitchell] Jobe and Litton are out of [the case]. They were flunkies for the RTC...." *See supra* n. 2.

14

the standard it would use in potential multiple employer situations to determine employer status in *Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985) (adopting the hybrid test defined in *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979)).[13]   In *Mares,* the court examined three possible tests, labeled "agency," "economic realities," and "hybrid."  The agency test turns on the employer's right to control the employee.  *Id.*   The economic realities test turns on whether the employee, as a matter of economic reality, is dependent upon the business to which he renders service.  *Id.*   The hybrid test steers a middle ground, focussing on "the extent of the employer's right to control the "means and manner' of the worker's performance."  *Id.*   (quoting *Spirides,* 613 F.2d at 831).

The articulation, elaboration, and application of the hybrid test was first accomplished by the *Spirides* court, which suggested a laundry list of factors for courts to consider when utilizing the hybrid test.  The court warned that "[c]onsideration of all the circumstances of the work relationship is essential, and no one factor is determinative."  *Id.* at 831 (footnote omitted).  *See also Deal v. State Farm County Mut. Ins. Co. of Texas,* 5 F.3d 117, 118-19 (5th Cir.1993) (applying hybrid test to determine whether insurance company was insurance agent's employer under Title VII and ADEA);  *Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017,

_____

[13]We note that as a preliminary issue, the defendant must fall within the statutory definition of "employer" in Title VII. *See* 42 U.S.C. § 2000e(b).  Neither Mitchell Jobe nor Litton allege anywhere that they do not fall within this statutory definition of employer.  For purposes of this appeal, we assume that they do fall within this definition.

15

1019-20 (5th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991) (applying hybrid test to determine whether Texas was teachers' employer under Title VII).  The *Mares* court accepted the *Spirides* factors, but noted that the right to control is an especially crucial factor.  *Mares,* 777 F.2d at 1067-68.

The district court wove its decision to grant partial final judgment to Mitchell Jobe and Litton on the Title VII issues with fragile thread.  The court stated that because the RTC exercised "operating control over all the employees of the bank," the RTC was the plaintiff's employer.  The court stated that "the nominal employers[14] had neither control over the plaintiffs nor any role in the actions taken against them," and granted final judgment to Mitchell Jobe and Litton.

The borrowed servant doctrine and the agency test are cut from the same cloth.[15]  The Supreme Court case the district court cited for support explained the borrowed servant doctrine in a suit involving a railroad employee who was injured while loading mail under the direction of the post office.  The Court's analysis under

---

[14]It is interesting that the district court referred to the "nominal employers," *plural,* apparently meaning Mitchell Jobe and Litton.  The record does not reveal any written contract or agreement between Litton and the plaintiffs for employment.  This may be relevant in addressing the oral contract issue discussed below.

[15]We repeat that the borrowed servant test uses criteria similar to the agency test expressly rejected by the *Mares* court. 777 F.2d at 1067 n. 1 ("The strict common law "agency" test generally has not been applied to federal social welfare and antidiscrimination legislation, since it is considered inconsistent with the remedial purposes behind such legislation.") (citing cases).

16

the borrowed servant doctrine turned on who controlled and directed the employee's work.[16]

In light of *Mares* and its progeny, we find that the district court committed an error of law when clothing its decision in the ill-fitting borrowed servant doctrine rather than the well-tailored hybrid test to determine whether the defendants were the plaintiffs' employer under Title VII. The "right to control" is a common and important thread running through the borrowed servant doctrine, agency test, and hybrid test. However, the hybrid test is fabricated with additional threads to yield a different pattern. *Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1160 (5th Cir.1986) (repeating the *Spirides* laundry list of factors in addition to the right to control in a single employer Title VII case). The grant of summary judgment regarding Title VII unravels because the court below applied the wrong legal standard to determine employee status. On remand, the hybrid test, as enunciated in *Spirides* and adopted and applied in *Mares,* is an appropriate starting point for determining whether Litton is an employer under Title VII.[17]

---

[16]"Whether the railroad company may be held liable for [the employee's] act depends not upon the fact that he was their servant generally, but upon whether the work which he was doing at the time was their work or that of another; a question determined, usually at least, by ascertaining under whose authority and command the work was being done. When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant in respect to his acts in that service, is to be dealt with as the servant of the latter and not the former." *Denton v. Yazoo & M. V. R. Co.,* 284 U.S. 305, 308, 52 S.Ct. 141, 141, 76 L.Ed. 310 (1932).

[17]The factors listed in *Spirides,* in addition to the right to control are:

The district court did not specifically address the conflicting interpretations of the evidence in the record concerning Litton's possible status as an employer under Title VII in its opinion granting partial final judgment to Litton. There is evidence in the record concerning Litton's relationship to the plaintiffs. Without commenting on the strength or persuasiveness of this evidence, we find that there may be a genuine issue of material fact regarding Litton's employer status. On remand to the district court, the record should be carefully examined and evaluated in applying the hybrid test in determining whether Litton is an employer for Title VII purposes.

The individual defendants argue that even if they were considered the plaintiffs' employer under Title VII, they would be entitled to summary judgment on the retaliatory discharge issue. They claim that the plaintiffs failed to carry their legal burden, as described by the cases applying Title VII. *See Whatley v.*

> "(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer'; (9) whether the worker accumulates retirement benefits; (10) whether the "employer' pays social security taxes; and (11) the intention of the parties."

*Spirides,* 613 F.2d at 832.

*Metropolitan Atlanta Rapid Transit Auth.,* 632 F.2d 1325 (5th Cir.1980); *McKenna v. Weinberger,* 729 F.2d 783 (D.C.Cir.1984). Plaintiffs contend they were discharged in retaliation for reporting allegations of sexual harassment by Emerson.

The Supreme Court has recently reexamined the elaborate tapestry of shifting burdens in Title VII suits in *St. Mary's Honor Ctr. v. Hicks,* --- U.S. ----, ---- - ----, 113 S.Ct. 2742, 2747-53, 125 L.Ed.2d 407 (1993). The Court set out to untangle the basic burden shifting process by identifying three procedural steps. One proceeds to the next step only after the prior one is made.

First, the plaintiffs must establish a prima facie case of the alleged wrongdoing by a preponderance of the evidence. Once the prima facie case is established, there is a presumption of discrimination. Second, the defendant must articulate some legitimate, nondiscriminatory reason for discharging the employee. Once this step is taken, the presumption of discrimination created by the prima facie case is pierced. In order to patch their discrimination claim, the plaintiffs must prove that the legitimate reason articulated by the defendant was false and that the defendant's real reason for discharging the plaintiff was discriminatory or otherwise prohibited by Title VII. The plaintiffs bear the ultimate burden of proving intentional discrimination at all times. *Id.* at ---- - ----, 113 S.Ct. at 2747-48; *see also Fields v. Hallsville Independent School Dist.,* 906 F.2d 1017 (5th Cir.1990); *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992).

19

The plaintiffs' prima facie case for retaliation under Title VII is woven from three threads. The claimant must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that she experienced an adverse employment action following the protected activity; and (3) that a causal link exists between the protected activity and the adverse employment action. *Shirley,* 970 F.2d at 42; *Whatley,* 632 F.2d at 1328; *Jenkins v. Orkin Exterminating Co.,* 646 F.Supp. 1274, 1277 (E.D.Tex.1986). In its motion for summary judgment, the RTC did not dispute that the plaintiffs had the first two parts of the prima facia case.[18] Instead, the RTC claimed that plaintiffs had no evidence of causation. The RTC concluded that the plaintiffs' prima facia case fell apart without the causation thread to stitch together their statutorily protected activities and their termination.

The RTC contends that its decision to accelerate the "final resolution" of Columbia was the cause of the plaintiffs' employment termination. It argues that this decision did not offend Title VII, because it caused the termination of all of the employees at Columbia, not just the plaintiffs. Further, it claims the decision was motivated by economic reasons. Therefore, the RTC concludes that the plaintiffs cannot prove that they were fired in retaliation for protected conduct.

The courts have sketched an outline of indicia of causation in Title VII cases, because causation is difficult to prove.

---

[18]Litton did not submit a brief on the issue, because the district court dismissed the Title VII claims against it earlier.

Employers rarely leave concrete evidence of their retaliatory purposes and motives. For example, in *Jenkins,* the court looked to three factors for guidance in determining causation. First, the court examined the employee's past disciplinary record. Second, the court investigated whether the employer followed its typical policy and procedures in terminating the employee. Third, it examined the temporal relationship between the employee's conduct and discharge. *Jenkins,* 646 F.Supp. at 1278. This analysis is highly fact specific, as the Supreme Court recently noted. *St. Mary's,* --- U.S. at ----, 113 S.Ct. at 2756 ("the question facing triers of fact in discrimination cases is both sensitive and difficult.") (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). On remand to the district court, there may be a conclusion of causation in the discriminatory discharge issue based on a development and analysis of the facts.

V. Oral Contract

The plaintiffs argued below that they entered an oral contract with Litton and the RTC for at least four months employment and two weeks severance pay. The district court, in a memorandum opinion, concluded that "[t]here is no evidence of any oral contract, only the assertion by the plaintiffs." The court granted summary judgment against the plaintiffs on this issue.

The plaintiffs contend that there are two employment contracts in this case. First, there is the written contract for "at will" employment between Mitchell Jobe and the plaintiffs. Second,

21

plaintiffs argue that there is an oral contract between the plaintiffs, Litton, and the RTC. The plaintiffs have produced evidence, in the form of affidavits and depositions to support their contentions. The defendants have also produced evidence to support their argument that the written contract with Mitchell Jobe is the only employment contract existing in this case.

Determining whether there are two contracts or one contract, and what the parties intended the terms these contracts to embrace, is a very fact specific endeavor. *Foreca, S.A. v. GRD Dev. Co.,* 758 S.W.2d 744, 746 (Tex.1988) (holding that questions concerning the formation and terms of a particular contract, and the intent of the parties, were properly considered questions of fact for a jury to decide); *Cothron Aviation, Inc. v. Avco Corp.,* 843 S.W.2d 260, 264 (Tex.App.—Ft. Worth 1992) (reviewing grant of summary judgment on question of whether an oral settlement agreement was formed); *cf., McClure v. Duggan,* 674 F.Supp. 211 (N.D.Tex.1987). The plaintiffs and defendants have articulated conflicting summary judgment evidence. Without commenting on the strength or credibility of this evidence, we find that the parties have raised a genuine issue of material fact regarding the possible existence of an oral contract and the terms of any contracts between the parties. Therefore, we reverse the district court's grant of summary judgment and remand this issue to the district court to allow the fact finder to sort through the evidence and iron out the inconsistencies.

VI. Conclusion

We AFFIRM district court's grant of summary judgment to defendants on the 12 U.S.C. § 1831j claims. We AFFIRM summary judgment in favor of Mitchell Jobe on the Title VII claims. We REVERSE and REMAND the district court's grant of summary judgment to the RTC and Litton on the Title VII claims. We REVERSE AND REMAND the district court's grant of summary judgment to the RTC and Litton on the oral contract claims.