REVISED, May 8, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 97-50526**

**JAMES A. ROSS,**

**Plaintiff-Appellant,**

**VERSUS**

**UNIVERSITY OF TEXAS AT SAN ANTONIO; BOARD OF REGENTS**
**OF THE UNIVERSITY OF TEXAS SYSTEM,**

**Defendants-Appellees.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**JAMES A. ROSS,**

**Plaintiff-Appellant,**

**VERSUS**

**RUSSEL BRINER; JAMES GAERTNER,**

**Defendants-Appellees.**

Appeal from the United States District Court
For the Western District of Texas

April 21, 1998

Before REAVLEY, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

James Ross appeals from the district court's grant of summary judgment in favor of the defendants in this age discrimination

suit.

## BACKGROUND

James Ross has been an Associate Professor of Accounting and Informational Systems in the Business School of the University of Texas at San Antonio since 1975. Ross is 55 years of age. Ross alleges that he is being paid less than similarly situated younger workers because of his age. Ross filed two law suits in federal court. In the first action, Ross sued the University and the Board of Regents, alleging that he was denied certain pay increases and that he was paid less for performing the same or similar work. Ross' claims in this action were brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA). In the second action, Ross sued his immediate supervisors, Division Director Russel Briner and Dean James Gaertner. Ross' action against the individual supervisors alleged that ill-will and discrimination by these state actors arbitrarily affected his compensation, thereby depriving Ross of his right to substantive due process.[1]

The University and the Board of Regents moved for summary

---

[1] Ross also alleged (1) that the University's compensation practices have a disparate impact on older workers, and (2) retaliation in violation of Title VII. Ross' retaliation claim was dismissed and Ross has not challenged the district court's dismissal in his brief on appeal. Similarly, Ross has not articulated any cogent argument with respect to his disparate impact claim. Those claims are therefore deemed abandoned and form no part of the Court's discussion. *See* FED. R. APP. P. 28(a)(5); *MacArthur v. University of Tex. Health Ctr.*, 45 F.3d 890, 896 (5th Cir. 1995); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

2

judgment on the ADEA claims.  Thereafter, Ross moved to consolidate the two cases.  The district court granted Ross' motion to consolidate, then granted the ADEA defendants' motion for summary judgment, purporting to finally dispose of all claims in both cases.  Ross appealed.

On appeal, Ross claims that the district court's grant of summary judgment with respect to his ADEA claims is in error because he submitted sufficient evidence to support a reasonable inference of age discrimination.  Ross also maintains that neither the defendant's motion for summary judgment nor the district court's order address his claim that younger employees were paid on a higher scale.

Ross claims the district court's grant of summary judgment is in error with respect to the Due Process claims because defendants Briner and Gaertner did not move for summary judgment.  Thus, the district court's entry of summary judgment was done sua sponte, and without reasonable notice to Ross.  *See* FED. R. CIV. P. 56(c); *Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997).

### DISCUSSION

### I.

The *McDonnell Douglas* burden shifting paradigm applies to age discrimination suits.  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996).[2]  To survive summary judgment, the plaintiff

---

[2]    *But see* *O'Connor v. Consolidated Coin Caterers Corp.*, 116 S. Ct. 1307, 1309-10 (1996) (leaving the question of the applicability of the *McDonnell Douglas* paradigm in ADEA cases

3

must initially demonstrate a prima facie case of age discrimination. *Id*. A prima facie case generally requires proof that the plaintiff is within the protected class, that he suffered an adverse employment decision, and some evidence that the employment decision was motivated by unlawful age discrimination. *E.g.*, **Armendariz v. Pinkerton Tobacco**, 58 F.3d 144, 149 (5th Cir. 1995); **Bodenheimer v. PPG Indus., Inc.**, 5 F.3d 955, 957 (5th Cir. 1993).[3] Once shown, a plaintiff's prima facie case creates an inference of age discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason for the employment decision. **Rhodes**, 75 F.3d at 992-93. If the employer successfully articulates a legitimate non-discriminatory reason, the inference of discrimination vanishes, and plaintiff is left with the ultimate burden of presenting evidence from which a reasonable trier of fact could infer age discrimination. *Id*. at 993. To avoid summary judgment, an age discrimination plaintiff must present evidence that both (1) rebuts the employer's non-

---

open); **Rhodes**, 75 F.3d at 1003-06 (DeMoss, J., concurring in part and dissenting in part) (suggesting that there are important differences between the ADEA and Title VII that might support a different analysis).

[3]     **O'Connor** instructs that there must be some "logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption." **O'Connor**, 116 S. Ct. at 1310 (internal quotations omitted). For that reason, the formulation of the prima facie case necessarily varies depending upon the type of decision challenged. Using that principle, Ross should have been required to produce some evidence that he: (1) is within the protected age group; (2) suffered an adverse employment action; and that (3) the challenged employment decisions were motivated by unlawful age discrimination.

discriminatory reason, and (2) creates an inference that age was a determinative factor in the challenged employment decision. *Id*. at 994.

The district court held that Ross failed to establish a prima facie case, failed to rebut the employer's legitimate non-discriminatory reasons for the disparity in pay, and failed to create an inference that any pay disparity was the result of intentional age discrimination. We affirm, but for reasons that are different from those articulated by the district court.

## II.

Ross offers the following evidence of discrimination: (1) his own affidavit, with attached charts, (2) the deposition testimony of defendants Briner and Gaertner; and (3) the statement of an expert statistician. Neither the deposition testimony of Briner and Gaertner nor the expert's statement support any inference of age discrimination. Taken together, the deposition testimony of Briner and Gaertner merely establish that an equity adjustment may have been given to another professor who is only one year younger than Ross. The University's award of an equity increase to an employee within the protected class and only one year younger than Ross is insufficient in this case to create a reasonable inference of age discrimination. The expert's statement offers a conclusory opinion on the ultimate issue of discrimination, stating that there has been a "systematic effort, extending over a number of years, artificially to depress Professor Ross' salary in comparison to

5

those of younger faculty hired more recently." That statement is expressly based upon incomplete information and does not contain any statistical analysis that would be competent summary judgment testimony from this expert. *See* FED. R. EVID. 703 (sources underlying an expert's opinion must be of the type relied upon by experts in the field); ***First United Fin. Corp. v. United States Fidelity & Guar. Co.***, 96 F.3d 135, 136 (5th Cir. 1996) (expert opinion exceeding scope of expert's expertise properly excluded).

Ross relies heavily, as he must, upon his own affidavit and two appended charts. Chart 1 reflects the ages, salaries, and evaluation ratings for each of the associate professors in Ross' division. Chart 2 reflects the ages, salaries, and hire dates of each of several assistant professors in undisclosed divisions. The charts reflect that (1) Ross is paid less than seven assistant professors hired since 1991; (2) Ross is older than all but two of the nine associate professors and older than all of the assistant professors; (3) Ross earns less than all of the associate or assistant professors; and (4) the three oldest associate professors in the division earn the lowest salaries.

The University responds that the two professors who are older than Ross also make more money than he does. The University also responds that, although Ross has correctly identified several recently hired assistant professors making more than him, there is no evidence demonstrating which department those professors were hired into or what factors set their salaries.

Ross admits that the higher salaries earned by the recent

hires are explained by the University's practice of determining entry-level pay according to discipline, market demand and degree. Thus, Ross does not dispute that market forces, rather than age discrimination, are the primary cause of any disparate compensation between more recent hires and longstanding professors. We conclude that the charts in this case are insufficient to create a reasonable inference of age discrimination, because any disparities they reflect are caused by market factors not related to the age of the professors who make up the control group.

Ross maintains that the University conducted an equity study to determine which longstanding professors were entitled to an equity increase to make up for pay disparity caused by market forces. Although that study identified Ross as a candidate for an equity increase, none was awarded. Ross thus claims that the University's failure to give him an equity adjustment creates an inference of age discrimination. But Ross admits that equity adjustments were in fact awarded to four other associate professors, all of whom were within the protected age group. The University's willingness to make equity increases to other longstanding professors within the protected age group tends to negate, rather than support, an inference of discrimination.

## III.

The University maintains that Ross' lower pay is explained by poor performance appraisals and poor performance caused in large part by his time and energy commitment to his second occupation as

a practicing lawyer. The University offered evidence that Ross spends forty to fifty hours per week in his law office, from which he earned more than $100,000 in the year before this suit. The University maintains that Ross is rarely available to students except by phone, and that he is rarely on campus. In addition, the University maintains that the caliber of his professional writings is unacceptable.

Ross disputes the employer's legitimate non-discriminatory reason, but fails to offer competent rebuttal evidence. For example, Ross claims that younger faculty keep comparable hours on campus and still receive merit increases. Ross claims that younger faculty members publish comparable research and still receive merit increases. Ross fails, however, to refer the Court to any particularized evidence to support his subjective view of the facts. *See* ***Nichols v. Loral Vought Sys. Corp.***, 81 F.3d 38, 42 (5th Cir. 1996) (plaintiff's generalized statements about relative qualifications or the treatment of similarly situated employees is insufficient to support an inference of discrimination).

Ross also argues that the performance appraisals themselves are unreliable because they are the result of unlawful age animus. Ross supports that assertion with the statement of the expert witness and his own belief. Such evidence is ineffective to rebut the employer's fact-based judgment that Ross' significant commitment to his law practice created a divided loyalty which compromised his effectiveness at the University. *See* ***Pinkerton Tobacco***, 58 F.3d at 152; ***Little v. Republic Reining Co.***, 924 F.2d

8

93, 94 (5th Cir. 1991); *see also* **Waggoner v. City of Garland**, 987 F.2d 1160, 1165 (5th Cir. 1993) ("The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to transform the courts into personnel managers") (internal quotations omitted). Thus, Ross failed to submit competent summary judgment evidence sufficient to rebut his employer's non-discriminatory explanation for his lower pay.

In the final analysis, Ross' evidence shows no more than that he was the third oldest and lowest paid professor in his division, a fact which is adequately explained by the employer's legitimate non-discriminatory reason. We conclude that Ross' evidence is insufficient to support an inference of age discrimination. For that reason, summary judgment was appropriately granted with respect to Ross' claims of discrimination in violation of the ADEA.

## IV.

With respect to Ross' Due Process claims against his individual supervisors, Ross claims that the district court inappropriately entered summary judgment in favor of the defendants sua sponte, and without providing Ross adequate notice that judgment would be entered.

The district court is empowered to enter summary judgment sua sponte, provided the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment. As we stated in **Millar v. Houghton**, 115 F.3d 348 (5th Cir. 1997):

> Under Fed. R. Civ. P. 56(c), a party must be served with a motion for summary judgment at least

**9**

> 10 days before a court grants the motion against him.  Similarly, a party must be given at least 10 days notice before a court grants summary judgment *sua sponte*.  This requirement places a party on notice that he is in jeopardy of having his case dismissed and affords him the opportunity to put forth evidence to show precisely how he intends to prove his case at trial.

115 F.3d at 350 (footnotes omitted).  Despite the strictness of this rule, our Court has recognized that the district court's failure to provide notice may be harmless error.  ***Nowlin v. Resolution Trust Corp.***, 33 F.3d 498, 504 (5th Cir. 1994).  ***Nowlin*** held that error arising from the district court's sua sponte grant of summary judgment may be harmless when the "nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."  ***Id***.

In this case, Ross' allegation that Briner's and Gaertner's compensation practices deprived him of Due Process does not state a cognizable constitutional claim.  ***Dorsett v. Board of Trustees for State Colleges & Univs.***, 940 F.2d 121, 123 (5th Cir. 1991) (holding that complaints challenging "teaching assignments, pay increases, administrative matters, and departmental procedures" do not rise to the level of a constitutional deprivation).  Similarly, and by analogy to our Title VII precedent, Ross' allegation that he was less favorably reviewed does not involve an ultimate employment decision that could rise to the level of a constitutional deprivation.  ***Mattern v. Eastman Kodak Co.***, 104 F.3d 702, 708 (5th Cir.), *cert. denied*, 118 S. Ct. 336 (1997).  There is, therefore, no additional evidence that Ross could offer that would justify

**10**

relief as to his claims that his supervisors violated his right to Due Process of law.  That being the case, the district court's sua sponte entry of summary judgment is harmless error.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of defendants is AFFIRMED.