IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 5, 2009

Charles R. Fulbruge III
Clerk

No. 07-20865
Summary Calendar

OXY USA INC.

Plaintiff-Appellee

v.

JAMES HOLDEN, Trustee for Dirt Cheap Mine Trust; RONALD LEATHERS

Defendants-Appellants

v.

INTERNAL REVENUE SERVICE, an agency of the United States
Government

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-683

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

James Holden and Ronald Leathers appeal the district court's summary

judgment in favor of the Internal Revenue Service ("IRS") in an interpleader

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

action to determine who was the lawful recipient of certain mineral royalty payments. We AFFIRM.

## I. BACKGROUND

A. Leathers's Land Dispute

In November 2005, Ronald Leathers and his brother, Michael Leathers,[1] corresponded concerning a dispute over their respective rights to royalty payments generated by mineral interests from land in Kansas that formerly belonged to their late mother. Ronald wrote to Michael informing him that Michael was receiving mineral royalty payments that Ronald believed were rightfully his. In response, Michael wrote to remind Ronald that Ronald had signed a quitclaim deed for the Kansas property in 1998, and that deed did not reserve any mineral rights Ronald once had. Michael further noted that he had informed Ronald about the "quit claim problem" in October 2001 but failed to take any action to correct it.

In October 2006, Ronald Leathers and James Holden filed a petition in Texas state court against Michael, his wife Nancy Leathers, the administrator of the Kansas royalty payments–OXY USA, Inc. ("OXY"), and other petroleum companies. The petition asserted that Holden, trustee for the Dirt Cheap Mine Trust, a Colorado entity, was the assignee of "certain claims for recovery of real property and mineral royalties," including the disputed royalties from the Kansas land. Ronald and Holden sought a reconveyance of the mineral interests, as well as an accounting and restitution of royalties OXY improperly paid to Michael or Nancy.

In January 2007, Michael filed a petition in Kansas state court to quiet title to the property at issue. Michael alleged that he and Ronald had owned the land with their mother, Louise Leathers, in a partnership called the "Leathers

---

[1] Because multiple members of the Leathers family are involved in this dispute, they are referred to by first name.

Land Company." He further alleged that during litigation following their mother's death, Michael exercised a "buy out" provision in the partnership agreement to purchase the land in question. As part of the buy out, Ronald signed a quitclaim deed for the land to Michael. There was no express reservation of mineral rights in the deed.

B. Notice of Levy and Interpleader Action

By letter dated February 9, 2007, the IRS sent a notice of levy to OXY, informing the company that Ronald owed over $800,000 in delinquent federal income taxes. The notice instructed OXY to identify all property and rights to property belonging to Ronald and to then turn over to the IRS any "property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person."

On February 26, 2007, OXY brought this action against Holden (trustee for the Dirt Cheap Mine Trust), Ronald, Michael, Nancy, and the Internal Revenue Service ("IRS"), to interplead $25,784.27 in royalty payments. Citing the Texas state court lawsuit filed by Holden and Ronald, as well as the IRS notice of levy, OXY stated that it could be the subject of multiple suits by the various interpleader defendants, all claiming an interest in the mineral royalty payments. OXY also moved to deposit the royalty funds into the registry of the court, which was granted.

Three answers were filed to OXY's interpleader complaint, from Holden and Ronald (who moved to dismiss), the IRS, and Michael and Nancy. During a conference between counsel for the parties and the district court on September 17, 2007, Michael and Nancy conceded their claim to the funds.[2] The district court then found Holden to be a "fake trustee," which the IRS agreed with, and a characterization to which Holden and Ronald's counsel acquiesced. The court

---

[2] Specifically, counsel for Michael and Nancy Leathers told the court that they were "willing to release it. . . [d]ollarwise, it's not worth the fight."

also stated "[w]e established last time, didn't we, that there is no substance to the trust . . . [s]o [Ronald] Leathers is the real . . . non-taxpayer."[3]  Again, counsel to Holden and Ronald did not dispute this statement, but requested the opportunity to take depositions and other discovery to determine the proper amount of funds that OXY was holding.

Based on the parties' concessions at the conference, the district court entered a final judgment directing the funds to be disbursed to the United States Treasury and credited to Ronald's account with the IRS.  Holden and Ronald moved for a new trial, which the district court denied, and they now appeal the judgment.

## II.  DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment de novo.  See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All reasonable doubts and inferences must be resolved in the light most favorable to the non-movant.  Crawford, 234 F.3d at 902.

### B.    Sua Sponte Summary Judgment for the IRS

The district court is authorized to grant summary judgment sua sponte, provided that the losing party receives ten days' notice to come forward with all of its evidence in opposition to summary judgment.  Love v. Nat'l Med. Enters., 230 F.3d 765, 770 (5th Cir. 2000).  Failure to provide ten days notice is harmless where either the "nonmovant has no additional evidence or if all of the

---

[3] There was no transcript or recording of the prior conference conducted by the court on July 8, 2007.

nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact." Ross v. Univ. of Texas at San Antonio, 139 F.3d 521, 527 (5th Cir. 1998) (quoting Nowlin v. Resolution Trust Corp., 33 F.3d 498, 504 (5th Cir. 1994)).

In this case, although the record shows that Holden and Ronald were not given any notice before the district court made its summary judgment ruling, the lack of notice was harmless. At the conclusion of the conference it was apparent that no material facts remained at issue in the suit. Michael and Nancy, and stakeholder OXY, disclaimed any ownership of the $25,784.27. The parties conceded that Dirt Cheap Mine Trust was a fake trust, and therefore Holden did not have an interest in the funds superior to Ronald and the IRS. At that point, the only remaining ownership dispute as to the funds was between Ronald and the IRS. The district court then concluded that the IRS notice of levy meant that its claim to the funds was superior to Ronald's. No party disputes that the IRS properly served OXY with a notice of levy, which requires OXY to turn over any property owned by Ronald to the IRS. Once it is established that a taxpayer has property rights under state law to which a federal tax lien attaches, the priority of competing interests asserted against that property is governed by federal law. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985). The district court found, after considering the concessions of the parties, that Ronald had property rights to the funds at issue. There was no error in the district court directing the disbursement of funds to the U.S. Treasury, because only Ronald and the IRS were left asserting a claim to the royalty payment and there is a valid IRS levy on his royalty income from OXY.

Holden and Ronald do not state how they were prejudiced by the lack of notice or what evidence they/he would have produced to create a material fact issue. Ronald asserted that he did not owe the IRS as much as the nearly $900,000 claimed by the government, but he did not contend that he owed less

than the $25,784.27 in royalty payments at issue. Finally, Holden and Ronald did not dispute the court's finding at the conference that there was no substance to the Dirt Cheap Mine Trust and that "[Ronald] Leathers is the real . . . non-taxpayer." While they contest this assessment on appeal, they offer no evidence to demonstrate a fact issue on this point. Instead, they requested discovery only regarding whether the $25,784.27 was truly the amount collected by OXY, an issue that does not require resolution in this case because the IRS sought all of the funds that OXY put at issue in its interpleader complaint.

Although Holden and Ronald requested a new trial, that request did not state what evidence they offered to create a material fact issue as to the ownership of the disputed funds.[4] Similarly, Holden and Ronald Leathers have not specified on appeal what evidence they would produce to preclude summary judgment for the IRS. Holden and Ronald argue that they should be given the opportunity for discovery. However, Rule 56 does not require that any discovery take place before summary judgment can be granted. Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990). Further, Holden and Ronald still fail to articulate what evidence in support of their claims would be found with additional discovery. Finally, contrary to Holden and Ronald's assertions, the district court was not required to enter additional formalized Findings of Fact and Conclusions of Law. The relevant legal and factual bases for the judgment, while thin, are sufficiently clear in the conference transcript to allow review of their appeal. See Gupta v. East Texas State Univ., 564 F.2d 411, 415 (5th Cir. 1981) ("Scanty findings and conclusions such as those in the instant case are not advisable and, in another case, might well require a reversal and remand. In this instance, however, the failure to meet the technical requirements of Rule

---

[4] Holden and Ronald's argument that the district court "coerced" a settlement is without merit. The court simply ascertained the positions of the various parties and found that there was no material fact preventing it from determining that the IRS had the superior claim to the funds and was entitled to judgment as a matter of law.

52(a) is not fatal because the purposes behind the rule have been effectuated. . . . After reading the record, we are able to discern that the trial judge did not clearly err in making her findings and did not apply erroneous principles of law in reaching her conclusions.").

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.