Dear Mayor Curry:
You have asked this office to provide our legal opinion concerning the constitutionality of a City of New Iberia ordinance which prohibits all door-to-door solicitations upon private residences.[1] This ordinance provides the following:
 Sec. 22-46. Entry on residential premises.
 The going in and upon private residences in the city by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise not having been requested or invited to do so by the owner or occupant of such private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise or for the purpose of disposing of or peddling or hawking goods, wares and merchandise, is hereby declared to be unlawful.
At the outset, we note that the City of New Iberia ordinance imposes a complete ban on door-to-door commercial solicitation, making unlawful all sales or solicitation of sales on private property, where not requested by the owner or occupant. In Breard v. City of Alexandria, La.,341 U.S. 622 (1951), a case decided before the United States Supreme Court held that commercial speech was entitled to First Amendment protection, (discussed infra), a ban on commercial solicitation without the homeowner's consent withstood a First Amendment challenge. However, the current analysis of the U.S. Supreme Court in Central Hudson Gas Electric Corp. v. Public Service Comm'n, 447 U.S. 557 (1980), and the cases following Central Hudson, regarding the regulation of *Page 2 
commercial speech, indicates that an ordinance banning all commercial solicitation would be invalidated as restricting commercial speech more extensively than necessary to achieve the goal of protecting a homeowner's privacy.
The First Amendment of the U.S. Constitution states that "Congress shall make no law. . . . .abridging the freedom of speech".[2] InVirginia Bd. of Pharmacy v. Virginia Citizens Consumer Council,425 U.S. 748 (1976), the Supreme Court departed from its decision inBreard, supra, recognizing that commercial speech is afforded First
Amendment protection. See also Village of Schaumburg v. Citizens for aBetter Environment, 444 U.S. 620 (1980), in which the Supreme Court stated "to the extent that any of the Court's past decisions discussed in Part II hold or indicate that commercial speech is excluded from First
Amendment protections, those decisions, to that extent, are no longer good law". Schaumburg, at fn. 7.
Door-to-door solicitors selling goods "propose a commercial transaction", which is the test for identifying commercial speech.Virginia Bd. Of Pharmacy, supra. Further, the U.S. Supreme Court has granted substantial First Amendment protection to door-to-door canvassing and soliciting activities. Secretary of State v. Joseph H. Munson Co.,467 U.S. 947 (1984); Village of Schaumburg v. Citizens for a BetterEnvironment, 444 U.S. 620 (1980). It is beyond dispute that solicitation is a form of speech protected by the First Amendment. Munson,104 S.Ct. at 2849; Heffron v. International Society for KrishnaConsciousness, Inc., 452 U.S. 640, 647 (1981).
Where a municipality seeks by ordinance to completely ban door-to-door solicitors selling goods, or in the alternative to impose time, place or manner restrictions on solicitation, and that ordinance is challenged as unconstitutional under the First Amendment, a court will require the government to satisfy the test set forth by the U. S. Supreme Court inCentral Hudson Gas Electric Corp. v. Public Service Comm'n, 447 U.S. 557
(1980). In Central Hudson, the Supreme Court adopted a four-part test for the regulation of commercial speech.
 At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. 447 U.S. at 566, 100 S.Ct. at 2351.
The test articulated in Central Hudson was later refined by the U.S. Supreme Court in Board of Trustees of the State University of New Yorkvs. Fox, 492 U.S. 469 (1989). Thus, the current test may be defined as follows: *Page 3 
 Part 1: The commercial speech sought to be regulated must concern lawful activity and not be misleading. If the speech does not accurately inform the public about a lawful activity, it may be suppressed.
 Part 2: The state must assert a substantial interest to be achieved by its restrictions on commercial speech.
 Part 3: The restriction must "directly advance" the governmental interest.
 Part 4: If the governmental interest could be served by a more limited restriction on commercial speech, the excessive restriction cannot survive.
In the fourth part of the analysis, the U.S. Supreme Court has rejected the idea that a "least restrictive means" test is required. Instead, a "reasonable fit" between means and ends is required, with the means "narrowly tailored to achieve the desired objective." See Board ofTrustees vs. Fox, supra, 492 U.S. at 480.
In the cases of Project 80's I and Project 80's II, [3] the United States Court of Appeals for the Ninth Circuit applied the analysis ofCentral Hudson, as modified in Board of Trustees vs. Fox, and invalidated the ordinances of two Idaho municipalities. Both the City of Pocatello and the City of Idaho Falls enforced ordinances which imposed a blanket prohibition on door-to-door commercial solicitation.
Applying the first part of the Central Hudson analysis, the Project80's I court found that there were no allegations that the plaintiffs' sales activities were unlawful, misleading or deceptive, holding the plaintiffs' activities were protected by the First Amendment. Project 80'sI, supra, 876 F.2d at 714.
The cities In Project 80's I claimed that their interests in prohibiting door-to-door commercial solicitation were in protecting the privacy of its citizens, preventing crime and regulating commercial transactions. Applying the second part of the Central Hudson analysis, the court accepted these asserted government interests as substantial.Project 80's I, 876 F.2d at 714.
Applying the third part of the Central Hudson analysis, the court inProject 80's I found that the cities' interest in privacy was advanced by the ordinances, despite the fact that the cities were, in effect, making the choice for residents as to whether they wished to receive solicitors. Id., 876 F.2d at 714. While the court in Project 80's I,supra, found that the ordinances may have the effect of reducing crime, the court also determined that this claim was undermined by the fact that there was little in the record to substantiate it. Id. *Page 4 
The fourth part of the Central Hudson analysis required the cities to establish that the ordinance restrictions were no more extensive than necessary to serve the cities interests. The court initially held that the cities were required to employ the "least restrictive alternative" in achieving its desired end. Id. at 715, fn. 5. However, due to a conflict within the federal circuits, the Supreme Court vacated the opinion on this issue and remanded the cause to the court of appeals to consider its decision in Board of Trustees of the State University of New York v.Fox, supra, in which the Supreme Court held that Central Hudson did not require a "least restrictive means" analysis. Nevertheless, upon remand, the court of appeals held that even under a "less restrictive means" analysis, the ordinances at issue were not narrowly tailored to serve substantial government interests. Project 80's II, 942 F.2d at 637.
The Project 80's II court held that the ordinances in question swept too broadly with respect to the protection of privacy. Further, with respect to crime prevention, the court found that there was no evidence that the ordinances protected citizens from crime, since the ordinances did not prohibit strangers from approaching residences for other purposes. Id. at 638. Finally, the court suggested a number of less restrictive alternatives available to the cities which promote these interests, including the posting of signs by individual residents, registration and licensing of solicitors and normal law enforcement efforts. Id. at 638.
The decisions rendered in Central Hudson, Project 80's I, and Project80's II reflect that an ordinance imposing a blanket prohibition against lawful commercial door-to-door solicitation is likely to be held invalid if judicially challenged. However, municipalities may impose regulations on door-to-door solicitation, where those regulations do not amount to a prohibition. "Our jurisprudence has emphasized that `commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to `modes of regulation that might be impermissible in the realm of noncommercial expression.'" See Board of Trustees vs. Fox, supra,492 U.S. at 480, citing Ohralik v. Ohio State Bar Assn., 436 U.S. 447
(1978).
The question remains: what sort of regulations can a municipality place on door-to-door solicitation? Can a municipality impose time limitations or registration requirements? In City of Watseka v. IllinoisPublic Action, 796 F.2d 1547 (7th Cir. 1986) the court invalidated an ordinance placing a ban on solicitation from 5 p.m. to 9 p.m., Monday through Saturday. "Watseka is attempting to roll up the front sidewalks of all its citizens at a very early hour. Even Girl Scouts will have a difficult time selling their cookies by 5 p.m." 796 F.2d at 1556.
In the alternative, a municipality can impose registration requirements on those who solicit funds; however, a registration or permit requirement is invalid as it applies to religious proselytizing, anonymous political speech, and the distribution of handbills See Watchtower Bible and TractSociety of New York, Inc. v. Village of Stratton, 536 U.S. 150(2002). *Page 5 
Based upon the cited jurisprudence, we advise that if the City of New Iberia ordinance prohibiting all door-to-door solicitation is judicially challenged, a court would likely declare the ordinance unconstitutional under the First Amendment. Your city attorney should be consulted for his further advice in the adoption of any regulatory scheme pertaining to door-to-door solicitation, keeping in mind that any future ordinance must be narrowly tailored to serve the governmental interests of the City of New Iberia. See Board of Trustees vs. Fox, supra.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] Ordinances prohibiting door-to-door solicitation are designated "Green River" ordinances, because the first such ordinance was enacted in Green River, Wyoming. See Town of Green River v. Fuller BrushCo., 65 F.2d 112 (10th Cir. 1933).
[2] See U.S.C.A. Const. Amend. I.
[3] Project 80's, Inc. v. City of Pocatello, (Project 80's I),876 F.2d 711 (9th Cir. 1988); certiorari granted, judgment vacated by Cityof Idaho Falls, Idaho v. Project 80's, Inc., 493 U.S. 1013 (1990);judgment affirmed on remand to Project 80's, Inc. v. City of Pocatello,(Project 80's II), 942 F.2d 635 (9th Cir. 1991).